**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bernard Addison BAILEY,
Defendant–Appellant.**

No. 91–5303.

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1992.

Decided Sept. 16, 1992.

Charles Linwood Morgan, Jr., Charlotte, N.C., argued, for defendant-appellant.

Robert Jack Higdon, Jr., Asst. U.S. Atty. (Thomas J. Ashcraft, U.S. Atty., Patrice P. Carter, Robert James Conrad, Jr., Asst. U.S. Attys., on the brief), Charlotte, N.C., for plaintiff-appellee.

Before ERVIN, Chief Judge, and HALL and PHILLIPS, Circuit Judges.

## OPINION

PHILLIPS, Circuit Judge:

Bernard Bailey appeals a district court order requiring him to serve 57 months in prison and pay $16,222,792.14 in restitution to defrauded investors. Because we believe the district court erred in calculating Bailey's offense level under the United States Sentencing Guidelines and in failing to consider Bailey's financial condition as required by the Victim and Witness Protection Act, 18 U.S.C. §§ 3663, 3664 (VWPA), we vacate the sentence and the restitution order and remand for a determination of both in compliance with the Guidelines and the VWPA.

## I.

Bailey is the President of Entertainment Promotions and Productions, Inc. In this capacity, Bailey solicited funds from private investors to finance the promotion of concert events. The investors were told that their investments would yield quick, above-normal profits. After a concert event, Bailey either paid out the principal and profits to the investor or "rolled over" that amount to finance another concert.

Between 1986 and 1990, Bailey solicited funds for events with which he had no actual involvement. He furnished investors with fraudulent contracts to make them believe he was promoting a certain concert. He continually solicited new investments and used freshly secured funds to pay out "profits" to previous investors who had in fact lost money on their investments. Bailey furthered this scheme through the use of the United States mail and the interstate telephone system.

In 1988, Bailey failed to make promised payments to some of his investors, and the FBI launched an investigation in response to complaints. In April of 1990, in an interview with FBI agents, Bailey confessed to defrauding investors. He was charged on a twenty-one count indictment alleging mail and wire fraud, and he pled guilty to all charges. The district court sentenced Bailey to 57 months in prison, three years of supervised release in which Bailey may not engage in the concert promotion business, $16,222,792.14 in restitution to be disbursed to Bailey's creditors at the direction of the United States Attorney, and a $1050 special assessment.

This appeal followed. We consider first Bailey's challenge to his sentence of incarceration and then his challenges to the restitution order.

## II.

■ Pursuant to subsection (b)(1) of U.S.S.G. § 2F1.1 (Fraud and Deceit), the district court added 15 levels to Bailey's base offense level of six, finding that the loss resulting from the offense exceeded $10 million. According to Bailey, the actual loss was between $5 million and $10 million, which would require an addition only of 14 levels and result in a sentencing range of 41–51 months instead of the range of 46–57 months arrived at by the district court.

Bailey maintains that the district court improperly included in the calculation of loss the projected profits investors would have earned on their investments. The parties agree that Bailey defrauded investors of $8.8 million in lost principal and $16.2 million total in principal and projected profits, but Bailey contends that the lower figure should be used to determine loss under § 2F1.1. We review *de novo* the district court's interpretation of the Guidelines language. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989).

■ Application Note 7 to § 2F1.1 directs the sentencing judge to value losses in fraud cases in accordance with the Com-

mentary to § 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft). Under § 2B1.1, "loss" is defined as the "value of the property taken," which would seemingly limit the loss for sentencing purposes to the out-of-pocket funds of which Bailey defrauded investors—$8.8 million. However, at the time of Bailey's sentencing, Application Note 7 also stated:

In keeping with the Commission's policy on attempts, if a *probable or intended loss* that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss.

U.S.S.G.App. C at 221 (emphasis added). The district court accepted the government's contention that projected profits should be included in the loss calculation because they were "probable and intended" consequences of Bailey's scheme. We disagree.

A close reading of the Commentary reveals that the Sentencing Commission meant to limit the "probable and intended" provision to attempt crimes. *See, e.g., United States v. Davis,* 922 F.2d 1385, 1392 (9th Cir.1991) (using intended rather than actual loss in sentencing an attempt crime under § 2F1.1). The Commission's intention is manifest not only in the limiting language in Note 7, but also in the fact that the Commission amended § 2F1.1(b)(1) in 1988 to read "[i]f the loss exceeded ..." instead of "[i]f the estimated, probable or intended loss exceeded...." U.S.S.G.App. C at 10. In sentencing for attempt crimes, district courts are instructed to include probable and intended losses so that the sentence fully comprehends the breadth of a fraudulent activity, for example, in which the defendant was unable—by fortuity or poor planning—to defraud victims of the total amount intended. However, Bailey's crime was fully realized, and the extent of the loss from his fraud should be $8.8 million, the amount of out-of-pocket funds actually taken by Bailey in the course of his scheme.

Accordingly, we vacate the district court's sentence and remand for resentencing with directions that the district court use the $8.8 million out-of-pocket principal amount in the loss calculation under § 2F1.1.

### III.

#### A.

■ Bailey contends that the district court violated the VWPA by ordering him to make restitution of $16 million without sufficiently inquiring into his ability to comply. We agree. In fashioning a restitution order, a trial court must

consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a).

Although criminal restitution orders will not be overturned absent an abuse of discretion, *United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987), we have emphasized that the trial court's discretion is circumscribed by the procedural and substantive protections in the VWPA. *Id.* at 458. In that light, we have required district courts to make specific factual findings with respect to a defendant's resources, financial needs, and earning ability. These findings must be keyed to the amount of restitution ordered. *Id.* at 459. The VWPA implicitly requires the district court to balance the victim's interest in compensation against the financial circumstances of the defendant. *Id.* at 458.

The district court, through the pre-sentencing report, knew Bailey's net worth to be only $41,000. When Bailey is engaged in the concert promotion, his business is worth $200,000 annually, and Bailey holds a 25% interest in another promotions firm, Omega Artists. However, Bailey will be unable to engage in his business during his prison term, and the district court expressly prohibited him from promoting concerts during his three years of supervised release. The only comment on the record suggesting that the district court "considered" Bailey's financial condition is the

court's statement, with respect to the $16 million order, "I wouldn't count on them getting it, but that's what we're going to impose any way." (J.A. at 100) Later the court stated, "I'm sorry. I just can't see where there's any way that you'll [sic] ever gonna' pick up 16 million dollars the way you've been carrying on your business." (J.A. at 101). The evidence and the court's comments suggest it was rather obvious to the court that Bailey was incapable of complying with the restitution order.

■ Although the district court's comments suggest *some* consideration of Bailey's poor financial situation, we believe the VWPA contains a corresponding requirement that the district court take the defendant's financial condition into account in setting a restitution order that the defendant can satisfy without causing undue hardship to the defendant or his dependents. At least three circuits have held that the sentencing judge must fashion a restitution order with which the defendant could feasibly comply. *See United States v. Rogat*, 924 F.2d 983, 985 (10th Cir.1991) ("we will not uphold the district court's exercise of discretion absent any evidence the defendant is able to satisfy the restitution order"); *United States v. Mitchell*, 893 F.2d 935, 936 & n. 1 (8th Cir.1990) ("the sentencing court must fashion a payment schedule that a defendant can be expected to meet. If at some later time, the defendant's financial condition somehow changes, either the government or the defendant can return to the sentencing court and ask it to modify its order"); *United States v. Mahoney*, 859 F.2d 47, 51 (7th Cir.1988) (finding the restitution order itself—$288,000 over five years for a defendant with a $30,000 annual salary—"leaves little doubt that the judge simply forgot or disregarded the defendant's ability to pay and the needs of his dependent wife"). We agree with these courts' views on the matter.

■ A district court's failure to make a restitution order with which a defendant could possibly be expected to comply threatens respect for judicial orders generally. In *Mahoney*, the Seventh Circuit

opined that an impossible restitution order "is nothing but a sham, for the defendant has no chance of complying with the same, thus defeating any hope of restitution and impeding the rehabilitation process." *Id.* at 52. The Seventh Circuit instructed the trial court to "take into account the mandates of [the predecessor to § 3664(a)], including the defendant's financial condition and recommend a schedule of restitution within the probable means of the defendant." *Id.* We adhere to the Seventh Circuit's interpretation of the VWPA's statutory mandate.

■ Requiring a trial court to consider the defendant's financial circumstances and order restitution accordingly does not preclude a sentencing judge from ordering an indigent defendant to pay restitution. *Bruchey*, 810 F.2d at 461; *Rogat*, 924 F.2d at 985. Indigence is not necessarily a permanent condition. However, the court must make a factual determination that the defendant can feasibly comply with the order without undue hardship to himself or his dependents. *See, e.g., United States v. Morrison*, 938 F.2d 168, 172 (10th Cir.1991) (finding defendant who currently has a negative monthly cash flow will be able to comply with restitution order because of his education and job experience); *United States v. McClellan*, 868 F.2d 210, 213 (7th Cir.1989) (approving a restitution order above defendant's current ability to pay in light of expected future increases in defendant's income).

*McClellan* held that an order of restitution will be reversed on appeal if it is "not improbable" that the trial court failed to consider a mandatory statutory factor from § 3664(a). *Id.* at 212. In the instant case, we believe the district court effectively ignored the requirements of the statute. Not only would Bailey likely be unable to comply with the order if he were permitted to continue his enterprise in an honest fashion, but he will not be able to engage in his business during the time of his imprisonment or during his three-year supervised release. The court did not address the important question of how Bailey could possibly make restitution while confined in

prison or on release. *See United States v. Studley*, 892 F.2d 518, 532 (7th Cir.1989) (requiring such consideration).

Because the record and the district court's statements suggest that Bailey can not possible comply with the restitution order, we believe the district court abused its discretion in ordering $16 million in restitution. Accordingly, we vacate the order and remand for reconsideration, in accordance with this opinion, of any restitution to be ordered as a part of Bailey's sentence.

## IV.

Bailey also challenges the district court's inclusion in the restitution order of amounts lost by investors not named in the indictment and the district court's refusal to depart downward in light of Bailey's substantial restitution. We consider these challenges in turn.

## A.

▮▮▮▮ Bailey challenges the requirement that restitution be made to investors other than those mentioned in the indictment. We review this aspect of the order under the abuse of discretion standard. *Bruchey*, 810 F.2d at 458. Under the Victim Witness Protection Act, 18 U.S.C. §§ 3663, 3664 (VWPA), a district court may order a convicted criminal to pay restitution to "any victim" of his offense. 18 U.S.C. § 3663(a)(1).[1]

Bailey pled guilty to the "offense" of "defraud[ing] investors of monies in excess of fifteen million dollars." (J.A. at 5–6). The court ordered Bailey to pay restitution to victims of his fraud in the amount of $16.2 million. Bailey contends that the district court erred by ordering him to pay restitution to victims who were not specifically identified in the indictment. He claims the district court's restitution order violates *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979 (1990), which held that a court may order restitution only for the loss caused by the specific conduct that forms the basis of the offense of conviction. *Id.* at 413, 110 S.Ct. at 1981.

In *Hughey*, the defendant pled guilty to a single count of a multi-count indictment charging him with stealing credit cards from the mail and defrauding several banks through use of the stolen cards. The one count to which Hughey entered his plea charged him with fraudulent use of an MBank credit card issued to Hershey Godfrey. At sentencing, the district court imposed restitution totalling $90,431, a sum reflecting the total loss MBank sustained as a result of Hughey's fraudulent use of credit cards belonging to 21 MBank cardholders. The Fifth Circuit affirmed, rejecting Hughey's argument that the VWPA did not permit the court to order restitution in an amount exceeding $10,412, the loss MBank suffered from Hughey's use of Godfrey's credit card. *United States v. Hughey*, 877 F.2d 1256, 1264 (5th Cir.1989). The Supreme Court reversed, holding that restitution could only be imposed in the amount of $10,412 because that was the loss caused by the offense of conviction.

We believe the district court's restitution order was permissible under 18 U.S.C. § 3663(a)(1) and *Hughey*. Simply, Bailey pled guilty to the "specific conduct" of "defraud[ing] investors of monies in excess of fifteen million dollars." The central difference between the "offense" in Bailey's case and that in *Hughey* is that Bailey's offense was defined broadly in the indictment. Cases following *Hughey* have re-

---

1. Six months after the Supreme Court decided *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), Congress added the following language as subsection (a)(2) of 18 U.S.C. § 3663:

> [A] victim of an offense that involves as an element a scheme ... means any person directly harmed by the defendant's criminal conduct in the course of the scheme.

The government relied on this provision to argue that the district court was within its discretion in ordering restitution to individuals not named in the indictment. While (a)(2) is not applicable to Bailey's conduct, which occurred prior to the enactment of the new provision, we believe the subsequent adoption of (a)(2) lends support to our view that *Hughey* should be read narrowly to apply only when the restitution award clearly encompasses 6350 35 6 an offense for which the defendant was not convicted.

versed restitution orders mainly where the trial court orders restitution for acts of which the defendant was not convicted. The court below did not commit that error.

In *United States v. Young*, 932 F.2d 1035 (2d Cir.1991), the Second Circuit faced the same factual scenario as the Supreme Court faced in *Hughey*. The defendant was indicted on two counts of impersonating a federal officer and defrauding individuals of money through his illegal behavior. Count one charged him with defrauding one individual of $5,500, and count two charged him with defrauding another individual of $14,900. The defendant pled guilty to count one, but the trial court ordered him to pay restitution in the amount of $20,400, the total amount obtained in the two counts. The Second Circuit reversed in accordance with *Hughey*, finding that the proper amount of restitution was the $5,500 obtained from the individual mentioned in count one.

The instant case differs significantly from *Young* because Bailey pled guilty to every count of the indictment, including the extremely broad charge that he defrauded investors of monies in excess of $15 million, whereas the defendant in *Young* pled guilty to less than all the counts upon which the properly vacated restitutionary order was based.

Bailey's case also differs from that presented in *United States v. Sharp*, 941 F.2d 811 (9th Cir.1991). In *Sharp*, the defendant pled *nolo contendere* to two counts of a 63-count indictment. One of the two counts charged that a $3,000 fraudulent transfer was part of an overall scheme which defrauded various victims of $8.5 million. However, the amounts alleged in the two counts did not approach the $8.5 million restitution order, which represented losses from the entire scheme. *Id.* at 814. The Ninth Circuit reversed, repudiating its prior rule that when the crime charged involves a scheme, the court may order restitution to all victims, even when the defendant is convicted of only certain parts of that scheme. *See United States v. Pomazi*, 851 F.2d 244, 250 (9th Cir.1988). The *Sharp* court held that "[e]ven when the

offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction." *Sharp*, 941 F.2d at 815.

Unlike the trial court in *Sharp*, however, the sentencing court here did not broaden the restitution order beyond the plea agreement simply by virtue of the fact that a scheme had been alleged. To the contrary, Bailey pled guilty to every count in the indictment, including ones charging that he defrauded investors in an amount exceeding $15 million. The court in this way did not vitiate Bailey's right to plead to only a portion of the indictment and thereby limit his exposure to restitution.

We believe the distinction between *Hughey* and the instant case is extremely important. The rule in *Hughey* precludes trial courts from awarding restitution for loss caused by conduct that is not the basis of the offense of conviction. *See Hughey*, 495 U.S. at 413, 110 S.Ct. at 1981. The instant case is distinguishable. The indictment charged Bailey with engaging in an extended fraudulent enterprise, and Bailey pled guilty to the indictment in its entirety. The only monetary amount listed in the indictment is "in excess of fifteen million dollars," and the trial court's award does not violate that provision (nor significantly exceed the floor amount specifically identified). The names listed in the indictment only represent contacts Bailey made through the mail or the telephone system; the individual counts do not mention monetary amounts allegedly obtained through each specific contact. Accordingly, we have no basis on which to find that the district court abused its discretion in ordering Bailey to pay a restitutionary amount totalling $16.2 million.

B.

■ Bailey also challenges the district court's failure to depart downward in light of his alleged substantial restitution. Bailey claims that during the year preceding his indictment, he made restitution to Magnum Properties, a major investor in his business, in the amount of approximately

$7.4 million. Citing *United States v. Garlick*, 951 F.2d 161, 163 (8th Cir.1991), which held that the guidelines provide authority to depart downward for extraordinary restitution, Bailey claims the district court erred in refusing to depart downward.

Title 18, U.S.C. § 3742(a) grants jurisdiction over a defendant's appeal of his sentence when the defendant believes the sentence: (1) was imposed in violation of law; (2) is based on an incorrect application of the Guidelines; (3) is greater than the sentence specified in the guideline range; or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable. We have generally refused review of a district court's refusal to depart downward, *United States v. Bayerle*, 898 F.2d 28, 31 (4th Cir.1990), but we have found a sentence to have been imposed in violation of law where the refusal to depart downward was based on the district court's mistaken view that it lacked the authority to depart. *Id.* at 31. However, where, as in this case, the record is silent with respect to the judge's refusal to depart downward, we cannot infer that the judge believed he lacked the authority to depart. Instead, we are constrained to find that the judge merely exercised his discretion under the guidelines not to depart. Accordingly, we lack jurisdiction to review Bailey's appeal of the district court's refusal to depart downward for substantial restitution.[2]

### V.

For the foregoing reasons, we vacate the sentence and the restitution order and remand for a recalculation of Bailey's offense level and the restitution order in accordance with this opinion. We affirm the district court's order of restitution to victims not listed in the indictment. We lack jurisdiction to review the district court's refusal to depart downward. We therefore leave the latter two rulings undisturbed.

---

2. Even if we had jurisdiction to review the district court's refusal to depart in this case, the alleged restitution was made during the time in which Bailey was involved in fraudulent activities with other investors. In all likelihood, the

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.

funds paid to Magnum were simply those secured from other investors in accordance with Bailey's scheme. We are skeptical of considering such a tainted payment to be restitutionary.