**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charlene HOYLE, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Cheryl McCullough BENTON,**
**Defendant–Appellant.**

**Nos. 93–5359, 93–5438.**

United States Court of Appeals,
Fourth Circuit.

Argued March 11, 1994.

Decided Sept. 1, 1994.

**ARGUED:** Julie Ehrenberger Harris, Weinstein & Sturges, P.A., Charlotte, NC; Marshall Anthony Swann, Charlotte, NC, for appellants. Robert James Conrad, Jr., Asst. U.S. Atty., Charlotte, NC, for appellee. **ON BRIEF:** E. Fitzgerald Parnell, III, Weinstein & Sturges, P.A., Charlotte, NC, for appellants. Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.

Before ERVIN, Chief Judge, HALL, Circuit Judge, and RONEY, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

Affirmed in part, dismissed in part, and vacated and remanded in part by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge K.K. HALL and Senior Judge RONEY joined.

## OPINION

ERVIN, Chief Judge:

Charlene Hoyle and Cheryl Benton are two of forty defendants charged with submitting false loan applications to Johnson C. Smith University ("JCSU") to obtain low interest student loans in violation of 18 U.S.C. §§ 1001 and 371.

Hoyle entered a plea agreement on January 7, 1993 in which she stipulated that her offense involved a sum greater than $20,-000.00 but less than $40,000.01. On April 1, 1993, Judge Robert D. Potter sentenced Hoyle to eight months imprisonment, three years supervised release, and restitution in the amount of $21,046.59. Hoyle challenges her conviction on this direct appeal, alleging ineffective assistance of counsel resulting from her attorney's negotiation of the plea agreement. For the reasons set forth below, we dismiss her appeal.

Benton pled guilty on January 26, 1993 to charges set forth in the Bill of Information, without a written plea agreement. A probation officer prepared her Presentence Report ("PSR"), which recommended adding interest to the amount of loss set forth in the indictment. On April 1, 1993, Judge Potter sentenced Benton to five years probation and restitution in the amount of $12,267.21, relying on the figures set forth in her PSR. Benton challenges the inclusion of interest and the calculation of the principal for purposes of determining her offense level under the Sentencing Guidelines. She also appeals the amount of restitution ordered. For the reasons set forth below, we vacate Benton's sentence and remand to the district court for resentencing, but we affirm the amount of restitution determined by the district court in its restitution order.

I.

Mary Bouler Hoyle, a financial officer at JCSU, provided more than 100 blank loan applications to her friends and family. She certified the applications of these non-students resulting in the disbursement of low interest student loans, which caused a loss to the U.S. government of over $500,000.

As part of this scheme, Charlene Hoyle prepared five fraudulent student loan applications between August 1990 and September 1991, resulting in her receipt of $17,010. Following her arraignment, Rodney Toth was appointed as Hoyle's counsel. On Toth's advice, Hoyle entered plea negotiations, in which interest was added to that figure, bringing the total to $21,046.59. Hoyle entered a plea agreement which stipulated the loss as greater than $20,000 but less than $40,000.01, adding six levels to the base offense level of four under the Sentencing Guidelines. The agreement also stipulated a two level increase for more than minimal planning and a two level reduction for acceptance of responsibility. The adjusted offense level set in the plea agreement was ten. The plea agreement also stated as follows:

8. The defendant is aware that the sentence to be imposed shall be in conformity with the *Federal Sentencing Guidelines,* and that a sentence imposed under the

Guidelines is without parole. The defendant is further aware that the sentence has not yet been determined by the Court, that any estimate of the likely sentence received from any source is a prediction not a promise, and that the Court has final discretion to impose any sentence up to the statutory maximum. Nevertheless, the defendant knowingly and expressly waives the right to appeal whatever sentence is imposed on any grounds other than ineffective assistance of counsel, including any appeal right conferred by Title 18, United States Code, Section 3742. Similarly, the defendant agrees not to contest either the conviction or the sentence in any post-conviction proceeding including, but not limited to, any proceeding under Title 28, United States Code, Section 2255.

At her Rule 11 hearing on January 26, 1993, Hoyle stated that she understood the import of the plea agreement and that she was giving up her rights to appeal. When asked if "you are entirely satisfied with the services of your attorney in this matter," Hoyle responded that she was so satisfied. J.A. 31. She was later sentenced to eight months imprisonment, three years supervised release and restitution in the amount of $21,046.59.

Cheryl Benton also participated in the fraudulent loan scheme. She prepared four false loan applications, resulting in disbursements to her of $9,913.75. That figure is set forth in the Bill of Information. Benton also assisted her husband in completing fraudulent applications in his name, resulting in disbursements to him of $9,390. The amounts received by Benton's husband were attributed to her pursuant to U.S.S.G. § 1B1.3.

Benton pled guilty, waiving a grand jury indictment, to the charges against her as set forth in the Bill of Information. A Presentence Report was later prepared that indicated that the amount attributable to her personally was $12,267.21 and to her through her husband was $11,567.61. The report makes clear that these figures include principal, as set forth in the Bill of Information, plus interest up to January 1, 1993.

Benton objected in writing to this determination of loss for sentencing purposes. She argued that interest should not be included and that the government's determination of principal is also incorrect. She asserts that the government's file showed disbursements of only $8,513.75, J.A. 44, that her receipts show checks for $4,486.69 and $4,159.52 totalling $8,582.46, J.A. 44–45, (while actually those two amounts equal $8,646.21,) and that she in fact received a total of $8,611.69, Appellants' Br. at 10. Benton does not make clear which of these three figures she claims to be the actual amount of loss.

At Benton's sentencing hearing, the district court determined that the figure in the Presentence Report was the most reliable and therefore assessed the loss at $23,834.82. Benton was sentenced to five years probation and to make restitution of $12,267.21.

## II.

■ Hoyle claims ineffective assistance of counsel because Toth negotiated a plea agreement (1) that allowed her to appeal only on the basis of ineffective assistance of counsel and waived her right to appeal the sentence, (2) that stipulated an incorrect offense level based on an incorrect restitution figure, and (3) that failed to provide an agreed binding sentence under Fed.R.Crim.P. 11(e)(1)(C). She also bases her claim on Toth's failure to object to the prosecutor's refusal to request a downward departure on the basis of Hoyle's assistance.

■ To establish ineffective assistance of counsel, Hoyle must show (1) that Toth's performance fell below an objective standard of reasonableness, and (2) that Hoyle was prejudiced by the deficiency because it created a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Smith v. Smith,* 931 F.2d 242, 244 (4th Cir.1991). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

■ Hoyle has brought her claim of ineffective assistance on direct appeal. Such claims, however, are best left to collateral review. *United States v. Tatum,* 943 F.2d 370, 379 (4th Cir.1991). Normally, a claim of ineffective assistance should be raised in a motion pursuant to 28 U.S.C. § 2255 because "the record [on direct appeal] is usually inadequately developed. The record often reveals only ambiguous symptoms of a more complex set of relationships which cannot be adequately addressed on direct appeal." *Tatum,* 943 F.2d at 379. Where, however, "the ineffectiveness appears on the trial record itself, we will hear such a claim [on direct appeal] without prior evidentiary hearings." *Id.* at 380 (quoting *United States v. Grandison,* 783 F.2d 1152, 1156–67 (4th Cir.), *cert. denied,* 479 U.S. 845, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986)). For a claim of ineffective assistance of counsel to be heard on direct appeal, it must "conclusively appear[ ] in the trial record itself that the defendant was not provided with effective representation." *United States v. Hanley,* 974 F.2d 14, 16 n. 2 (4th Cir.1992) (citing *United States v. Mandello,* 426 F.2d 1021 (4th Cir.1970)).

■ Hoyle argues that she raises the claim on direct appeal because that approach is the only option available to her under the plea agreement. She insists that paragraph 8 of the agreement prevents her from bringing a § 2255 claim for ineffective assistance. That provision reads

[s]imilarly, the defendant agrees not to contest either the conviction or the sentence in any post-conviction proceeding including, but not limited to any proceeding under Title 28, United States Code, Section 2255.

The word "similarly" relates to the preceding clause which states

[n]evertheless, the defendant knowingly and expressly waives the right to appeal whatever sentence is imposed on any grounds other than ineffective assistance of counsel, including any appeal right conferred by Title 18, United States Code, Section 3742.

We interpret paragraph 8 of the plea agreement to mean that Hoyle waived her right to appeal under 18 U.S.C. § 3742 and to launch a collateral attack under 28 U.S.C. § 2255 on any grounds other than ineffective assistance. Because Hoyle could have brought her claim under § 2255 and because the rec-

ord does not conclusively demonstrate that she received ineffective assistance of counsel, we dismiss her appeal.

### III.

### A.

■■■ Benton claims that the district court erred by including interest in its determination of loss for sentencing purposes. Whether the district court properly included interest is a legal question reviewed de novo. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989).

The district court relied on the calculations in the Presentence Report, which expressly stated that interest was included. The court sentenced Benton pursuant to U.S.S.G. § 2F1.1 for offenses involving fraud or deceit. Application note 7 to this section, as amended on November 1, 1992, instructs that

> valuation of loss is discussed in the Commentary to § 2B1.1 (Larceny, Embezzlement, and other Forms of Theft). As in theft cases, loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred. . . .

The referenced § 2B1.1 application note 2 also states that "loss does not include the interest that could have been earned had the funds not been stolen." The clear import of this commentary is that interest shall not be included to determine loss for sentencing purposes.

The government urges that *United States v. Lowder*, 5 F.3d 467 (10th Cir.1993) permits the inclusion of interest.[1] In that case, the defendant fraudulently promoted investments promising a 12% return and sent false statements to investors indicating that the guaranteed interest had indeed been earned. The Eleventh Circuit interpreted the 1992 amendment to U.S.S.G. § 2F1.1 (which it incorrectly stated became effective in 1991) "as disallowing 'opportunity cost' interest, or the time-value of money stolen from victims." *Id.* at 471. The court went on to find that

because the defendant had promised a 12% return and had falsely indicated that the interest had been earned, the interest was properly included in the loss. In Benton's case, however, the interest represented the time-value of money lost by lenders and therefore should be excluded even under *Lowder*.

The district court erred by including interest in its determination of loss for sentencing purposes in Benton's case. Rather than the Presentence Report figures of $12,267.21 and $11,567.61 totalling $23,834.82 attributable to Benton, the court should have used the figures set forth in the Bill of Information attributing $9,913.75 and $9,390.00 to Benton, totalling $19,303.75. The use of the lesser figure will result in a lower base offense level under the Sentencing Guidelines. We therefore vacate the sentence imposed by the district court and remand for resentencing.

### B.

■■■ Benton argues that the district court's use of the principal figures set forth in the Bill of Information is incorrect. The court's determination of the amount of loss is a factual issue to be reviewed for clear error. *Daughtrey*, 874 F.2d at 217.

■■■ Benton pled guilty under the Bill of Information, admitting the loss as set forth therein. A guilty plea is a solemn judicial admission of the truth of the charge, and the right to later contest that plea is usually foreclosed. *Via v. Superintendent, Powhatan Correctional Center*, 643 F.2d 167, 171 (4th Cir.1981). In Benton's effort to disavow her admission of the loss figures, she presents not one alternative but three separate figures. The government presented its original figure in the Bill of Information and made no changes other than the impermissible addition of interest. The district court did not clearly err in determining that the consistent figures presented by the government and to which Benton pled guilty were the most reliable figures. On remand, the

---

1. Other cases relied on by the government to support its assertion that interest is properly includable were decided prior to the November 1992 amendment to § 2F1.1. See *United States v. Kopp*, 951 F.2d 521 (3d Cir.1991); *United States v. Jones*, 933 F.2d 353 (6th Cir.1991).

district court may rely on the loss figures set forth in the Bill of Information.

### C.

Benton claims that because interest cannot be included in the determination of loss for sentencing purposes, neither can it be included in a determination of restitution. A criminal restitution award is reviewed for abuse of discretion. *United States v. Bruchey*, 810 F.2d 456, 458 (4th Cir.1987).

In setting restitution, the district court must balance the victim's interest in compensation against the financial resources and circumstances of the defendant. *Id.* The court must determine the victim's loss and the defendant's resources, needs and earning ability.[2] *Id.* These findings should be keyed to the specific type and amount of restitution ordered. *Id.* Benton has cited no support for her proposition that the loss determined for sentencing purposes must be used by the court in determining restitution.[3]

The district court determined that Benton must pay $12,267.21 restitution. That figure results from the principal amount attributable to Benton personally as set forth in the Bill of Information, with interest added to January 1, 1993. Although the court erred in using that figure for sentencing purposes, as demonstrated above, the court did not abuse its discretion by using that figure for restitution. The restitution order of the district court is affirmed.

### IV.

For the reasons set out above, we dismiss Hoyle's appeal, vacate Benton's sentence, and remand for resentencing in accordance with this opinion, while affirming the amount of restitution the district court determined that Benton must pay.

*DISMISSED IN PART, VACATED AND REMANDED IN PART, AND AFFIRMED IN PART.*

---

2. Because Benton has not challenged the district court's restitution order on the grounds that the court did not make the requisite findings, we do not address that issue on appeal.

3. See *United States v. Bailey*, 975 F.2d 1028, 1031 (4th Cir.1992). In that case, Bailey was convicted of defrauding investors of $8.8 million in principal, with a total loss of $16.2 million in principal and projected profits. The district court used the $16.2 million figure to determine Bailey's offense level for sentencing purposes. This court reversed, finding that the lower figure must be used for sentencing.

The district court had also set restitution at $16.2 million. We vacated the restitution order not because it was greater than the loss for sentencing purposes or because it improperly included projected profits, but simply because there was no way the defendant could possibly pay it. *Id.* at 1033. The district court erred by failing to consider the defendant's financial condition. *Id.* at 1030. The implication of this case is that a restitution order requiring payment of principal and projected profits would be permissible, provided the relevant factors were considered.