**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5654

WATSON JAMES TOLBERT, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
Henry M. Herlong, Jr., District Judge.
(CR-95-232)

Argued: June 6, 1996

Decided: August 26, 1996

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Benjamin Thomas Stepp, Assistant Federal Public
Defender, Greenville, South Carolina, for Appellant. William Corley
Lucius, Assistant United States Attorney, Greenville, South Carolina,
for Appellee. **ON BRIEF:** J. Preston Strom, Jr., United States Attor-
ney, Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Watson James Tolbert, Jr., appeals his convictions on two counts of credit card fraud. Tolbert also appeals the district court's sentencing order that he pay restitution to the victim of the fraud. We affirm.

I.

Victory Express Trucking Co., Inc., and Emro Marketing Co. entered into an agreement whereby Victory's drivers were permitted to purchase diesel fuel on credit from Emro's chain of Speedway service stations. Emro issued a number of credit cards for Victory's use, and it had its stations retain them on their premises. To fuel his truck at a Speedway station, a Victory driver needed only to give the attendant his name and his vehicle and license plate numbers. The driver completed the transaction by signing a credit slip.

James McKinney, who had worked for Victory for about a month in 1990, struck a deal with Tolbert, who owns a small trucking company, to fill Tolbert's trucks at Speedway stations in Spartanburg and Blacksburg, South Carolina. On numerous occasions in 1990-91, and again in 1993-94, McKinney posed as a Victory employee, giving false information to the station attendants and signing aliases to the credit slips so that Tolbert's trucks could be refueled at Victory's expense. The typical transaction involved $200-$350 worth of diesel fuel; Tolbert generally paid McKinney $65-$100 per fill-up. By the time the scheme was discovered, Victory had paid approximately $11,500 for fuel that it had not obtained.

McKinney and Tolbert were each indicted on two counts of using unauthorized access devices with the intent to defraud.[1] McKinney

_____

**1** <u>See</u> 18 U.S.C. § 1029, prescribing a fine and/or imprisonment for anyone who, <u>inter alia</u>, "knowingly and with intent to defraud traffics in or

2

pled guilty to one count in exchange for dismissal of the other; afterward, he agreed to testify against Tolbert. The jury found Tolbert guilty of both counts. The district court sentenced Tolbert to 18 months' imprisonment, and it ordered him to pay partial restitution to Victory. Tolbert appeals.

II.

At the time of trial, there was an unresolved state charge against McKinney for illegally possessing a pistol. Tolbert's counsel moved in limine for permission to question McKinney about the charge; the defense hoped to show that McKinney, who had a criminal record, was susceptible to being prosecuted by the federal authorities under 18 U.S.C. § 922(g)(1),[2] and was thus inclined to fabricate testimony favorable to the government. The district court denied the motion, stating that the link between the state charge and the possibility of federal prosecution was "too tenuous," and, thus, the probative value of the inquiry would be outweighed by its prejudicial effect.[3] Tolbert contends that the court's ruling was an abuse of its discretion, impinging on his Sixth Amendment right to confront the witnesses against him.

In United States v. Tindle, 808 F.2d 319 (4th Cir. 1987), a government witness testified pursuant to a plea agreement that specifically prohibited the government from prosecuting the witness for any

_____

uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1000 or more during that period[.]" 18 U.S.C.A.§ 1029(a)(2) (West Supp. 1996). The separate charges in the indictment reflect the thirty-one month hiatus between the similar courses of conduct.

[2] The statute provides, in pertinent part, that "[i]t shall be unlawful for any person . . . who has been convicted in any court of[ ] a crime punishable by imprisonment of a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition[.]" 18 U.S.C.A. § 922(g) and (1) (West Supp. 1996).

[3] See Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice. . . .").

3

crimes related to his involvement with the defendant's heroin distribution ring. At the time, the witness had already pled guilty to several drug-related charges in state court that could have formed the basis of a subsequent federal prosecution; the disposition of those charges in a manner favorable to the witness was predicated on his full cooperation with the government. Although the district court permitted the witness to be cross-examined concerning the unresolved charges and the nature of the plea agreement, it prohibited the defense from attempting to show that his association with the defendant had rendered him susceptible to being charged in federal court with engaging in a continuing criminal enterprise -- a crime that, on conviction, carries a potential life sentence without parole.**4**

We held that the district court did not abuse its discretion by limiting the defense's inquiry into the witness's potential bias to questions concerning the <u>actual</u> charges lodged against him, along with other, unspecified items mentioned in the plea agreement. <u>Id.</u> at 328. We noted that the witness had been effectively impeached through the revelation of his drug use and extensive criminal record, and that the jury had been aware that he already faced a potential sentence in excess of thirty years on the state charges. <u>Id.</u> We stated that "[w]hile it would not have been an abuse of discretion to allow questioning regarding possible § 848 violations, it was not an abuse of discretion to disallow such questioning." <u>Id.</u>

We recognize that Tolbert's case differs somewhat from <u>Tindle</u>, inasmuch as there was no evidence that McKinney's testimony was being offered in exchange for any promises from the government. It was, therefore, more difficult for the defense here to erode the witness's credibility, though the jury was told of McKinney's previous convictions for robbery, theft, and burglary; it was also revealed to the jury that McKinney had apparently lied on federal tax forms and on his job application with Victory.

Regardless of the extent to which doubt was cast upon McKinney's credibility, it remains that there is no more evidence in this case than in <u>Tindle</u> to support an inference that the witness's failure to provide testimony favorable to the government would result in his being

_____

**4** <u>See</u> 21 U.S.C.A. § 848(a) (West Supp. 1996).

4

charged with a specific federal crime. Indeed, such an inference finds much less support here, where the witness appears to have been free to abstain from testifying without fear of reprisal. **5** We hold that the district court's decision to curtail inquiry into what was, at best, a speculative eventuality, was not an abuse of its discretion.

III.

At sentencing, the district court concluded that Tolbert was responsible for $5,748 of Victory's loss, and it ordered him to pay $200 per month restitution upon his release from prison. In support of its ruling, the court stated only that "he has the ability to earn at least that amount to make restitution once he is released." Although Tolbert did not object at the time, he now maintains that the court's succinctness contravened 18 U.S.C. § 3664(a), which provides that

> [t]he court, in determining whether to order restitution . . . and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

Sentencing courts are required to make specific findings of fact as to each of the above factors, and the findings "must key a defendant's financial resources, financial needs, and earning ability to the type and amount of restitution." United States v. Molen, 9 F.3d 1084, 1086 (4th Cir. 1993), cert. denied, 114 S. Ct. 1649 (1994). The court must also "make a factual determination that the defendant can feasibly comply with the order without undue hardship to himself or his dependents." Id., quoting United States v. Bailey, 975 F.2d 1028, 1032 (4th Cir. 1992). The court may either make its own findings on the record, or it may adopt the probation officer's findings, provided

_____

**5** Though it plays no part in our decision, we note also that the prosecuting attorney represented to the district court that he had been unaware of the pending state charge against McKinney until so informed by defense counsel.

5

that they are adequately detailed in the presentence report. Molen, 9 F.3d at 1086.**6**

The district court's single-sentence pronouncement in this case cannot be construed to have complied with the basic requirements of the statute or to have approached the minimum specificity contemplated by our case law. Had Tolbert preserved the point by making a timely objection, we would be constrained to vacate the restitution order. See, e.g., United States v. Blake, 81 F.3d 498, 505 (4th Cir. 1996) ("As this court has previously admonished, failure to make the required findings necessitates remand.") (citations omitted). Because no such objection was made, we review only for plain error. See Fed. R. Crim. P. 52(b).**7**

A defendant is entitled to a remedy under Rule 52(b) if he can demonstrate (1) that his proceedings were infected with an error; (2) that was plain, or otherwise clear or obvious; (3) that affected his substantial rights -- meaning, in the typical case, that he must have been prejudiced in some way; and (4) that "seriously affects the fairness, integrity or public reputation of judicial proceedings," such that an appellate court should exercise its discretion to correct it. See United States v. Olano, 507 U.S. 725, 732-36 (1993).

In United States v. Castner, 50 F.3d 1267 (4th Cir. 1995), we reviewed an order of restitution for plain error. The district court in that case, as here, had adopted the findings of fact contained in each defendant's PSR, see note 6, supra, and we concluded that those

_____

**6** In ruling on Tolbert's stated objections to the probation officer's findings, the district court stated that it "accepts the findings in the presentence report." Although the PSR contains some raw data concerning Tolbert's financial condition as of June 1995, it is apparent that the probation officer made no adequately detailed findings regarding restitution upon which, under Molen, the district court could have relied. See Molen, 9 F.3d at 1087 ("[I]ncomplete or unclear recommended findings in a presentence report adopted by the district court are subject to attack just as are deficient separate findings made by the district court on the record.").
**7** Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

6

reports contained sufficient information to warrant affirmance. Id. at 1278.

Tolbert invites our attention to that portion of his PSR disclosing that, as of June 1995, he had a negative net worth and a negative monthly cash flow. These factors alone, however, do not compel a conclusion that no restitution may be ordered. See id. at 1278 & n.10 (impending bankruptcy and negative monthly cash flow "does not necessarily indicate an inability to pay, particularly when [the appellants'] PSRs reflect past success in business and above average earning capacities[ ]") (citations omitted). Indeed, a closer examination of Tolbert's PSR, along with his counsel's representations at sentencing, reveals that Tolbert owns a viable trucking business, that his wife is a self-employed beautician, and that the couple's equity in their home is nearly $40,000.

We are mindful that, upon his release from prison, Tolbert will have to shoulder part of the financial burden of providing for his two children. Nevertheless, though the district court's failure to make detailed restitution findings is an obvious error, Tolbert has not demonstrated a sufficient probability that the amount or rate of restitution would have been different had the court fully complied with the law. He has not, therefore, shown that the error was a "defect[ ] affecting substantial rights," which is the third prerequisite for obtaining relief under Rule 52(b). See Olano, 507 U.S. at 734, and note 7, supra.

IV.

In light of the foregoing, Tolbert's convictions and sentence are affirmed.

AFFIRMED

7