Filed:   January 8, 2004

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 03-4209
(CR-02-34)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HOWARD K. BAXLEY,

Defendant - Appellant.

O R D E R

The court amends its opinion filed December 24, 2003, as follows:

On page 1, district court information, line 2 -- the word "Middle" is deleted and replaced with the word "Eastern" and the word "Durham" is deleted and replaced with the word "Raleigh."

For the Court - By Direction

_____
Clerk

# UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                    No. 03-4209

HOWARD K. BAXLEY,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge, sitting by designation.
(CR-02-34)

Argued: December 5, 2003

Decided: December 24, 2003

Before WILKINS, Chief Judge, and WILKINSON
and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Jane Ely Pearce, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Raleigh, North Carolina, for Appellant. Anne Margaret
Hayes, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public
Defender, Stephen C. Gordon, Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. Frank D. Whitney, United
States Attorney, Christine Witcover Dean, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

## OPINION

PER CURIAM:

This appeal raises a single question: does controlling circuit prece-
dent permit a sentencing court to calculate the amount of loss result-
ing from a completed (rather than simply attempted) fraud offense by
looking to the amount of intended loss. We conclude that it does and
that the applicable sentencing guidelines require this whenever
intended loss can be determined and is greater than the amount of
actual loss. Therefore, we affirm.

### I.

Howard K. Baxley pled guilty to four counts of mail fraud in viola-
tion of 18 U.S.C. § 1341 (2000). The guilty plea arises from fifteen
life insurance policies with a combined face value of $501,340, which
Baxley obtained without revealing his infection with the human
immune deficiency virus ("HIV"). Baxley viaticated most of these
policies and received immediate payouts totaling $38,866. In essence,
Baxley lied on his applications for life insurance to secure policies
that, in light of his HIV positive status, the insurers likely would not
have issued. He then sold these fraudulently obtained policies to third
party investors, who accepted the obligation to pay the policy premi-
ums and became the beneficiaries under the policies, and, in return,
gave Baxley ten to fifteen percent of a policy's face value.

The Sentencing Guidelines provide that the offense level for a
fraud offense increases by increments based on the total dollar
amount of loss associated with the offense. *See* United States Sen-
tencing Guidelines ("U.S.S.G.") § 2F.1(b)(1). In its final Presentence
Investigation Report ("PSR"), the probation office calculated the total
dollar amount of loss in Baxley's case by looking to the amount of
loss that Baxley *intended* and found that "[a]s a result of BAXLEY's
conduct, the loss for guideline purposes is $ 501,340," or the face

value of the life insurance policies. Although the probation office did not explain its reasoning in detail, it appears to have determined that, by fraudulently obtaining life insurance policies that insurers would not have otherwise granted to an HIV positive individual, Baxley rendered the insurers liable for the face value of the policies upon his death and that Baxley therefore intended to create this "loss" to the insurers as a necessary step to receive his viatication payouts.

Baxley objected to the loss calculation set forth in the PSR on the ground that, under *United States v. Bailey*, 975 F.2d 1028 (4th Cir. 1992), the sentencing court could include intended loss only when calculating loss for attempt offenses, *not* completed fraud offenses, like those he committed. According to Baxley, our holding in *Bailey* limits the loss in this case, involving a completed fraud offense, to actual loss, or the amounts received by Baxley through viatication. Baxley also moved for a downward departure pursuant to § 2F1.1, Application Note 10, which provides that "[i]n a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense," such that "a downward departure may be warranted."

The district court declined to follow *Bailey* and accepted the loss calculation (which included intended loss) set forth in the PSR — $501,340. Accordingly, the court assigned Baxley an offense level of 18, which, in conjunction with his criminal history category of III, resulted in a guideline range of 33 to 41 months. The district court further determined, however, to grant Baxley's motion for a downward departure because the court found "that the $ 501,000 is a bit of an over-statement, when the actual was only $ 36,000. I believe the legal theory is correct for the intended loss to be calculated but I find that over-states [sic] the seriousness of the offense and . . . that the more appropriate finding is that the loss was $ 250,000." Based on a total loss amount of $ 250,000 (which reduced Baxley's offense level to 16 with a guideline range of 27 to 33 months), the district court sentenced Baxley to 27 months on each count, to be served concurrently, and a term of supervised release of two years.

II.

On appeal, Baxley argues once again that *Bailey* bars the inclusion of intended loss in the total loss amount for completed fraud offenses

and controls in this case because there is "no decision explicitly over-ruling" *Bailey*. Brief of Appellant at 8 and 14.

In *Bailey*, 975 F.2d at 1031, issued in 1992, we held that "[a] close reading of" the then-applicable commentary to U.S.S.G. § 2F1.1 "reveals that the Sentencing Commission meant to limit" intended loss "to attempt crimes." Baxley acknowledges, as he must, that four years later in *United States v. Williams*, 81 F.3d 1321, 1328 (4th Cir. 1996), we concluded that § 2F.1 required a court to calculate loss to include "not just actual loss but intended loss *whenever* the later can be determined," including when the loss "is attributable to a completed fraud." (emphasis added). *See also United States v. Miller*, 316 F.3d 495, 499 (4th Cir. 2003); *United States v. Loayza*, 102 F.3d 257, 266 (4th Cir. 1997). Baxley contends, however, that we must follow *Bailey*, because "a panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court." *Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001).

The *Mentavlos* principle does not apply here. Although *Bailey* and *Williams* reached different conclusions as to whether intended loss should be calculated in calculating the loss resulting from a completed fraud offense, they did so based on very different guideline commentary. They do not, therefore, constitute "irreconcilable" precedent as Baxley suggests, but merely interpretation and application of different underlying guideline commentary.

*Bailey* apparently interpreted and applied the 1990 Sentencing Guidelines, while *Williams* interpreted and applied the Guidelines amended as of November 1, 1994.[1] The district court sentenced Baxley under the 1997 Sentencing Guidelines, which were, in relevant part, substantively the same as those applicable in *Williams*. After we decided *Bailey* and before we decided *Williams*, the Sentencing Com-

---

[1]Neither *Bailey* nor *Williams* identify the year of the Sentencing Guidelines applied. However, the sentencing in *Bailey* took place sometime after April 1990 and the court relied on language in the Guidelines that no longer existed by November 1, 1991. 975 F.2d at 1030, 1031. In *Williams*, it appears that the sentencing took place after December 16, 1994, 81 F.3d at 1323-24, and the court references a provision that did not take effect until November 1, 1991, 81 F.3d at 1327.

mission amended the commentary to § 2F1.1 and that of an accompanying interrelated guideline section at issue here, § 2B1.1, in such a way as to clarify that intended loss is to be included in calculating the loss amount for all fraud offenses — completed or attempted.

The Supreme Court has directed that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). A change in commentary can change the law of the circuit by indicating that the circuit's prior interpretation of a guideline does not accord with the Commission's intent. *United States v. Capers*, 61 F.3d 1100, 1110-1113 (4th Cir. 1995). When a change in the commentary mandates an interpretation different than that previously employed, courts may apply a guideline in accord with the new commentary without overruling any prior, contrary circuit precedent.[2]

Although the amendments to the commentary made after *Bailey* and prior to *Williams* do not expressly state that intended loss applies to completed offenses, they do make that principle significantly more evident. When interpreted in *Bailey*, application note 7 in the commentary to § 2F1.1 provided:

> *In keeping with the Commission's policy on attempts*, if a *probable or intended loss* that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss.

---

[2]Baxley recognizes some of the differences in commentary text, but argues that "[distinguishing *Bailey* from *Williams* on the basis that the cases involved different versions of Application Note 7 . . . is not very convincing" because "*Bailey's* logic, that intended losses are counted only when the crime is an attempt, should seemingly have applied in *Williams*." Brief of Appellant at 13. We do not here attempt to distinguish the holdings of *Bailey* and *Williams* (we find the Government's attempt to do so by characterizing the reference to attempts in Bailey as *dicta* unavailing), but rather to ascertain the commentary text underlying the holdings.

*See Bailey*, 975 F.2d at 1031 (first emphasis added; second emphasis in original). Similarly, when we decided *Bailey*, Application Note 2 to § 2B1.1 stated that "[i]n cases of partially completed conduct, the loss is to be determined in accordance with the provisions of § 2X1.1 (Attempt, Solicitation, or Conspiracy)."[3]

In 1991, the Commission removed the sentence in Application Note 7 to § 2F1.1, set forth above, which we had quoted and relied on in *Bailey*, and added a sentence that provides: "Consistent with the provisions of § 2X1.1 (Attempt, Solicitation or Conspiracy), if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." The Commission also revised the discussion of partially completed offenses and moved it out of the primary paragraph of Application Note 2 to § 2B1.1 placing it apart and further down in a separate paragraph. And in 1992, the Commission added the following sentence to Application Note 7 to § 2F1.1: "As in theft cases, loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred."

Cumulatively, these and other changes clarified that loss resulting from fraud in all cases should include intended loss, if that loss can be determined. As the probation office explained:

> Note 7 clearly defers to the Commentary of 2B1.1 for discussion of the valuation of loss . . . . In Application Note 7, it goes on to note that, *consistent* with the provisions of 2X1.1, if an intended loss the defendant was attempting to inflict can be determined, that amount is to be used for loss purposes if it is greater than the actual loss. Application Note 7 does not indicate that like 2X1.1, the crime itself must be an attempt for intended loss to apply.

---

[3]Section 2X1.1 remained in relevant part the same from *Bailey* to *Williams* and specified the calculation of offense level for attempt, solicitation, and conspiracy; its commentary discusses the addition of offense characteristics for "actually intended" actions and the computation of offense level for a partially completed offense. § 2X1.1, cmt. n.2, 4.

PSR Addendum at 2 (emphasis in original).

The best evidence of the import of the amendments to the commentary can be found in the Commission's explanation of its amendments. Most significantly, when the Commission amended Application Note 7 to § 2F1.1 in 1992 it explained: "This amendment clarifies that interest is not included in the determination of loss. In addition, it clarifies that in fraudulent loan application cases, *as in other types of fraud, if the intended loss is greater than the actual loss, the intended loss is used*." U.S.S.G., Appendix C, amend. 470 (effective November 1, 1992) (emphasis added).

The Commission also generally described its amendments as designed to remove ambiguity about the calculation of loss under § 2F1.1. Thus, with regard to the relevant 1991 amendments, the Commission explained that they were effected to "provide[] a more precise reference in the commentary of these guidelines to the discussion in § 2X1.1 that applies in the case of a partially completed offense" and "reorder[] the material in these notes, and divide[] them into separate paragraphs for greater clarity." U.S.S.G., Appendix C, amend. 393 (effective November 1, 1991). The Commission further noted that the amendments "conform[] the working of Application Note 7 of the commentary to § 2F1.1 to Application Note 2 of the commentary to § 2B1.1 to make clear that the treatment of attempts in cases of fraud and theft is identical," and "provide[] additional guidance with respect to the determination of loss." *Id.*

In holding that, because in *Williams* we relied on a different version of the Guidelines commentary than in *Bailey*, the former did not overrule the latter *sub silentio*, we do not suggest that every time the Commission amends the guideline commentary prior precedent interpreting earlier commentary is defunct or open to wholesale reinterpretation. Rather, we reach our holding only because of the unusual circumstances present here. In this case, the Commission not only amended the commentary to § 2B1.1 and § 2F1.1 in a way that clarified that intended loss should be calculated for completed offenses, but expressly stated in the course of doing so that "in . . . fraud, if the intended loss is greater than the actual loss, the intended loss is used." Further, in *Bailey* we relied on a "close reading of the Commentary" and quoted the sentence in the former Application Note 7 that would

most suggest that intended loss is limited to attempt crimes — "In keeping with the Commission's policy on attempts, if a *probable or intended loss* that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss." *Bailey*, 975 F.2d at 1031 (emphasis added by the *Bailey* court). The Commission had significantly altered this sentence by the time we decided *Williams*. And, after *Williams*, the Commission made its intent on this point even more explicit — § 2B1.1 now encompasses both theft and fraud and expressly provides in commentary that "loss is the greater of actual or intended loss" and intended loss "means the pecuniary harm that was intended to result from the offense." U.S.S.G., § 2B1.1, cmt. n.2 (2002).

Finally, we note that at oral argument, Baxley contended that, even if a sentencing court could consider intended loss in calculating loss for a completed fraud offense, the district court erred in this case by setting the loss amount as the face value of the insurance policies, and that we must remand for the district court to recalculate the amount of loss. Baxley suggested a number of theories in support of remand, *e.g.*, that the face value of an insurance policy does not represent loss, but lost profit such that it falls within the rule that "loss . . . does not . . . include interest the victim could have earned on such funds had the offense not occurred," § 2F1.1, cmt. n.7; that intended loss cannot be calculated in this case because the amount of intended loss cannot "be determined" with sufficient certainty, § 2F1.1, cmt. n.7 (providing that "if an intended loss *can be determined*, this figure will be used") (emphasis added); and that the district court incorrectly determined that Baxley "intended" the loss to include the amounts of the face values of the policies. Baxley, however, failed to raise these alternative arguments in his appellate brief and therefore waived them. *See 11126 Balt. Blvd. Inc. v. Prince George's Co.*, 58 F.3d 988, 993 n.74 (4th Cir. 1995) (en banc).

In any event, a district court's factual determinations as to the amount of intended loss could only be reversed if clearly erroneous. *Miller*, 316 F.3d at 503. Baxley conceded at the sentencing hearing that the amount of the "potential intended loss" is $501,340. The district court granted a downward departure, holding Baxley accountable for only $250,000 of loss. Under the Sentencing Guidelines, "the loss need not be determined with precision. The court need only make a

reasonable estimate of the loss, given the available information." § 2F1.1, cmt. n.8 (1997). Given Baxley's concession, the district court's final determination of loss amount, and the governing law, we would be hard pressed to conclude that the district court clearly erred in its factual determinations. *See generally United States v. Lorefice*, 192 F.3d 647, 655 (7th Cir. 1999) (upholding district court's factual finding that the face value of life insurance policies constituted intended loss under § 2F1.1).

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.