**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mario MARTINEZ, Defendant–Appellant,**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Steven COX, a/k/a Bobby,**
**Defendant–Appellant.**

**No. 95–5331, 95–5332.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1996.

Decided Feb. 18, 1998.

**ARGUED:** Margaret Brooke Murdock, Thieblot, Ryan, Martin & Ferguson, Baltimore, MD, for Appellant Cox. Gary Allen Ticknor, Baltimore, MD, for Appellant Martinez. Thomas M. DiBiagio, Asst. U.S. Atty., Baltimore, MD, for Appellee. **ON BRIEF:** Lynne A. Battaglia, U.S. Atty., Baltimore, MD, for Appellee.

Before WIDENER, MURNAGHAN, and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge MURNAGHAN joined. Judge NIEMEYER wrote a separate opinion, concurring in all of the opinion except for Part II, and as to Part II, concurring only in the judgment.

## OPINION

WIDENER, Circuit Judge:

On June 24, 1993, defendants Mario Martinez and Steven Cox, among others, were charged by indictment in the U.S. District Court for the District of Maryland with conspiracy to travel in interstate commerce with the intent to commit a murder for hire in violation of 18 U.S.C. § 371 (Count III); travel in interstate commerce to commit a murder for hire in violation of 18 U.S.C. § 1958 (Count IV); use of a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c) (Count V); conspiracy to commit a crime of violence in aid of racketeering activity in violation of 18 U.S.C. § 1959 (Count VI); commission of a crime of violence in aid of racketeering activity in violation of 18 U.S.C. § 1959 (Count VII); and use of a firearm in connection with a crime of violence in aid of racketeering activity in violation of 18 U.S.C. § 924(c) (Count VIII). The district court dismissed Count VII prior to submission of the case to the jury. On November 8, 1993, the jury found Martinez guilty of Counts VI and VIII and found Cox guilty of Counts III, IV, V, VI, and VIII. The defendants now appeal their § 924(c) convictions under *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). They also challenge a supplemental jury instruction given by the court and raise various sentencing issues. We affirm the judgment of the district court.

## I.

By late summer of 1992, members of Emmanuel Umegbolu's Baltimore drug organization were refusing to pay him for heroin he had supplied on a contingent basis. More specifically, one member of the drug organization by the name of Prince Ankrah had refused to pay Umegbolu for 200 grams of heroin and owed Umegbolu $36,000. In addition, Darrell Bond (a/k/a Pluck) had robbed Umegbolu of 100 grams of heroin during this same period of time. In September 1992, Umegbolu ordered Ankrah and Pluck robbed and killed to send a message to other members of his drug organization.

On September 7, 1992, Umegbolu called Thomas Faulkner, a local Baltimorean and dealer for Umegbolu. Umegbolu told Faulkner to come to the Econolodge on Security Boulevard in Baltimore. At the motel, Faulkner met the enforcers Steven Cox and individuals identified only as Terrence and Rob in addition to Umegbolu. Umegbolu told Faulkner that he wanted him to help Cox find Pluck and Pluck's accomplice, one Basil, to get Umegbolu's money back. Cox and Faulkner unsuccessfully attempted to locate Pluck and Basil.

On September 8, 1992, the next day, Cox, Terrence, and Rob went to Pluck's mother's house to find Pluck. They located the house but did not go inside. The next day, Cox and Umegbolu visited Ankrah and demanded payment. Ankrah refused to pay and called security; Cox and Umegbolu were forced to leave. Later, Cox, Terrence, and Rob visited Pluck's mother's house again, confronted Pluck's mother, and threatened to kill her and everyone in the house if Pluck did not return the heroin or money.

After an attempted robbery of a drug dealer on September 9, 1993, Umegbolu and his enforcers left Baltimore and went to New York.

On September 14, 1992, Cox held a meeting at his record store in the Bronx with Calvin Deair and Floyd Sinclair to plan another trip to Baltimore. At the meeting Cox stated that an African, (obviously Umegbolu), wanted individuals named Pluck and Prince killed in exchange for a portion of any drugs or money recovered from the intended victims. Cox decided to have the guns to be used for the killings transported separately. The next day, Deair and Sinclair gave Bernard Christian two 9–mm. semiautomatic pistols to take to Baltimore.

Christian arrived in Baltimore by train on September 16, 1992. Detective Gary Cover of the Baltimore City Police Department stopped him. Christian consented to a search of the bag he was carrying, and Cover found the two pistols Christian was transporting. Christian then agreed to cooperate.

Later that evening, Christian was placed in Room 825 of the Days Inn in downtown Baltimore under DEA supervision. The room was wired with video and audio equipment. The two guns found in Christian's bag were rendered inoperable and also placed in the room. Once in the room, Christian called Faulkner. They discussed killing Pluck. Christian also requested that they bring Martinez.

Cox, Martinez, Deair, and Sinclair arrived in Baltimore during the early morning hours of September 17, 1992. The four first went to BWI Airport and changed to a white rental van. They then went to the Days Inn. Cox and Martinez went up to Room 825 to meet with Christian, and Deair later followed. Videotape from the room showed Martinez looking at the two guns. Cox apparently had no physical contact with the guns in Room 825.

Later in the morning, Cox, Martinez, Deair, and Sinclair left the motel to meet Thomas Faulkner, who was supposed to point out Ankrah and Pluck. Christian remained in the motel room with the guns. According to Faulkner, the five of them drove by Pluck's mother's house (Pluck was not there) and then drove by Ankrah's apartment (Ankrah was not there either). The five next went to the Welcome Inn on Security Boulevard where Faulkner registered a room in his name.

Martinez and Faulkner then returned to the Days Inn to pick up Christian. Christian, Martinez, and Faulkner were arrested as they attempted to leave the motel with Faulkner carrying the guns. Cox, Sinclair, and Deair were later arrested at the Welcome Inn.

The defendants' trial began on September 13, 1993 and concluded on November 8, 1993. The jury found Cox guilty of Counts III, IV, V, VI, and VIII and found Martinez guilty of Counts VI and VIII. The district court sentenced Cox to 60 months under Counts V and VIII, which sentence was merged and made to run consecutively with 210 months under Counts III, IV, and VI, for a total sentence of 270 months. Martinez was sentenced to 60 months under Count VIII to run consecutively with 120 months under Count VI, for a total sentence of 180 months.

The defendants now appeal. Martinez and Cox both challenge the sufficiency of the evidence to support their convictions for a violation of 18 U.S.C. § 924(c) as charged, respectively, in Count VIII and Counts V and VIII of the indictment. In addition, Martinez contends that a supplemental instruction given by the district court in response to a question from the jury violated the due process clause. Both defendants also argue that the district court erred in sentencing them under 18 U.S.C. § 1959(a)(5), for attempting or conspiring to commit murder, when the indictment generically charged them with conspiracy to commit a crime of violence. Martinez further objects to the district court's use of U.S.S.G. § 2A1.5(a) in determining his base offense level for sentencing. Finally, Cox asserts that the district court erred in deferring to post-conviction collateral review the issue of whether he was entitled to a downward departure on the basis of incompetency of trial counsel.

## II.

The defendants challenge their § 924(c) convictions in view of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501,

133 L.Ed.2d 472 (1995). The jury instructions in this case failed to charge the *Bailey* standard of active employment required to convict a defendant of using a firearm.[1] 516 U.S. at 142–46, 116 S.Ct. at 505–07. Under *Johnson v. United States,* —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the district court's erroneous instruction on an element of the offense is subject to harmless error analysis. *Johnson,* —— U.S. at —— ——, 117 S.Ct. at 1548–50. *Johnson* permits application of the plain error standard set forth in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).[2]

Applying the *Olano* test to this case, it is clear that: (1) there is error; (2) the error is plain; and (3) the error "affect[s] substantial rights." *Olano,* 507 U.S. at 732–35, 113 S.Ct. at 1776–78. It is thus within our discretion to notice and correct the error, if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 732, 113 S.Ct. at 1776 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). In applying the fourth prong of *Olano's* harmless error test, we follow the Court in *Johnson* which considered whether the evidence on the element was "overwhelming" and "essentially uncontroverted at trial." *Johnson,* —— U.S. at ——, 117 S.Ct. at 1550.

The record evidence regarding the defendants' using and carrying of the firearms shows that Martinez examined the guns in Room 825 of the Days Inn and that Cox was present when Deair and Sinclair gave the guns to Christian for transportation to Baltimore. It is not clear whether Cox ever had physical contact with the guns. In a question to the court, the jury indicated its belief at that time that Martinez was the only defendant who ever "physically handled a weapon." Because any of the defendants' personal physical contact with the guns was limited and most of the evidence thereof attenuated, we cannot say that the evidence on the use or carry element of § 924(c) was "overwhelming" or "essentially uncontroverted." *Johnson,* —— U.S. at ——, 117 S.Ct. at 1550. Thus, if we were considering only the application of the evidence to the substantive charge, and did not consider 18 U.S.C. § 2, we are of opinion that the defendants' § 924(c) convictions should be set aside.

However, both the indictment and the jury charge permitted a § 924(c) conviction under an aiding and abetting theory of liability set forth in 18 U.S.C. § 2. The district court instructed the jury that it could find the defendants guilty of violating § 924(c) if the government proved beyond a reasonable doubt that "another person actually committed a violation of the offense with which the defendant is charged and that the defendant aided or abetted that person in the commission of the offense." The judge stated the inquiry to the jury as follows: "Did [the

1. The district court instructed as follows:

The next element is that this firearm was carried, used or carried. Now what does that mean? The phrase "uses or carries a firearm" means having a firearm or firearms available to assist or aid in the commission of the crime, these crimes alleged in the underlying counts.

In determining whether the defendant used or carried a firearm, you may consider all of the factors received in evidence in the case, including the nature of the underlying crime of violence or drug trafficking alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

The government is not required to show that the defendant actually displayed or fired the weapon. The government is required however to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time that a crime of violence or drug trafficking was committed.

The language of the given instruction is virtually identical to instructions both we and other circuits have held invalid. *United States v. Lopez,* 100 F.3d 98, 102–03 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997); *United States v. Robinson,* 96 F.3d 246, 249–50 (7th Cir.1996); *United States v. Simpson,* 94 F.3d 1373, 1378–79 (10th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996); *United States v. Smith,* 94 F.3d 122, 124 (4th Cir.1996); *United States v. Webster,* 84 F.3d 1056, 1066–67 (8th Cir.1996). The government has conceded that the district court's definition of use was inconsistent with *Bailey.*

2. Defendants did not object in the district court to the jury instruction, thus, Federal Rule of Criminal Procedure 52(b) governs. Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

defendant] participate in the crime charged as something he wished to bring about? Did he associate himself with the criminal venture knowingly and willingly? Did he seek by his actions to make the criminal venture succeed? If he did, then the defendant is an aider and abettor and therefore guilty of the offense." [3]

Considering the aiding and abetting charge, we are of opinion that the evidence supporting conviction is overwhelming and essentially uncontroverted at trial. There can be no doubt that the defendants were heavily involved in the plot to kill Pluck and Prince Ankrah and that the two firearms were an integral part of this plan. Because the court also charged the jury that the substantive offense could have been committed by "another person" as long as the defendants aided or abetted the crime, we are of opinion that the jury should not have found the defendants anything but guilty of the § 924(c) charges had the jury been properly charged. Based on these facts, we are of opinion that there will not be a "miscarriage of justice" if we do not "notice" the district court's error. *Olano*, 507 U.S. at 736, 113 S.Ct. at 1778–79. Therefore, we affirm the defendants' § 924(c) convictions based on the aiding and abetting theory of liability and hold that the erroneous jury instruction was harmless error.

### III.

Martinez next challenges the district court's decision to give a supplemental instruction in response to a jury request regarding Martinez's membership in the conspiracy. In examining a district court's response to a jury's request for clarification on a charge, the inquiry is whether the court addressed the jury's inquiry fairly and accurately without creating prejudice. *United States v. Jonathan Smith*, 62 F.3d 641, 646 (4th Cir.1995); *United States v. United Medical and Surgical Supply Corp.*, 989 F.2d 1390, 1407 (4th Cir.1993).

On the thirteenth day of deliberation in this case, the jury sent the following two inquiries to the district court:

In your instructions, you stated that a member must "knowingly and voluntarily" join a conspiracy. Does Mario Martinez meet this element since Bernard Christian was, at that time, a government agent.

or

If Mario Martinez was not coming to Baltimore until after Bernard Christian, *a government agent*, telephoned him, *can* he be guilty of *any* charges.

We are not asking you for a verdict, only for the legal pretense for him to be *either* guilty or not guilty. Again, is it *possible* for Martinez to even be considered?

(emphasis in original)

Ethically speaking, some of us feel that since it was *only* a government's phone call that "accidentally" entered [sic] Mr. Martinez into coming down, he *can* not be found guilty on any counts.

(emphasis in original)

The district court responded that a defendant could not join a conspiracy during a telephone conversation with a government agent, but nevertheless could join the conspiracy by agreement with persons other than the agent either before or after the call. The court also instructed that Christian's alleged telephone call to New York was neither illegal nor in violation of Martinez's legal rights. It should be noted that Martinez did not present an entrapment defense at trial.

Martinez complains that the supplemental instruction omitted the government's burden of showing beyond a reasonable doubt when Martinez joined the conspiracy and whether the joinder was a willful act. Although the district court did not explicitly restate these points in the instruction, the court did instruct the jury to "read this (and other) supplemental instructions in the context of all the instructions as a whole." And we note the district court had previously instructed

---

**3.** In quoting the district court's jury instruction on the aiding and abetting theory of liability, we do not express any opinion as to the correctness of the instruction's form. Because the instruction was not objected to in the district court, we accept it for purposes of our § 924(c) analysis.

on just those points. The district court's statement of the law was fair and accurate. We find no error.

## IV.

■ Martinez and Cox also challenge the district court's decision to sentence them under 18 U.S.C. § 1959(a)(5) rather than § 1959(a)(4) for their convictions on Count VI. Count VI alleged that the defendants conspired to "commit and threaten to commit a crime of violence against one or more individuals in violation of the laws of the State of Maryland and the United States" in aid of racketeering. It did not specify a particular crime of violence as the object of the conspiracy. The defendants now argue that they should have been sentenced under § 1959(a)(4), prescribing the punishment for threatening to commit a crime of violence, instead of § 1959(a)(5), prescribing the punishment for attempting or conspiring to commit murder or kidnapping. The former sets a maximum imprisonment of five years, the latter a maximum of ten years.

The defendants frame this as a criminal liability issue, claiming that the indictment as worded provided them insufficient notice of the charge against them. In our view, however, the indictment sufficiently set out the activity for which the defendants were tried. Once the jury found the defendants guilty of conspiracy to commit the conduct prohibited by § 1959(a) and specified in the indictment, the district court selected the appropriate sentencing provision from § 1959(a)(1)-(6). The two parts of the statute operate separately: § 1959(a) sets forth the activity for which a person may be punished, while § 1959(a)(1), (6) provides the punishment.[4]

The defendants appeal to the identity between § 1959(a)(4)'s "threatening to commit a crime of violence" language and similar language in the indictment. Section 1959(a)(4), however, governs *threatening* to commit a crime of violence rather than *conspiring* to commit murder as mentioned in § 1959(a)(5). The indictment here charged the defendants with conspiracy, not with merely threatening a crime of violence as mentioned in § 1959(a)(4). Section 1959(a)(4) thus was inapplicable. The district court accordingly was authorized to determine that conspiring to commit murder was the specific crime of violence conspiracy for which the defendants should be sentenced since the indictment did not indicate a particular violent act. The court therefore correctly applied the ten-year maximum of § 1959(a)(5).

## V.

■ In addition, Martinez argues that the trial court erred in applying the sentencing guidelines to his conspiracy conviction under Count VI. At sentencing, the district court found that the crime of violence underlying Martinez's conspiracy conviction was conspiracy to commit murder.[5] The court

---

4. The relevant portion of 18 U.S.C. § 1959 provides as follows:

(a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—

. . .

(4) for threatening to commit a crime of violence, by imprisonment for not more than five years or a fine under this title, or both;

(5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for

not more than ten years or a fine under this title, or both. . . .

The language "shall be punished" marks the boundary between the statute's criminal liability and sentencing provisions.

5. The district court properly evaluated the evidence before it in this case. At the sentencing hearing for Martinez, the court stated:

In this case Mr. Martinez was convicted under Count 6 and Count 8, both counts address a crime of violence, and it is up to me to decide what crime of violence Mr. Martinez committed.

The model that is used for factual determinations in sentencing is that the Judge at the time of sentencing makes findings of fact based upon the preponderance of the evidence from all of the evidence in the case that appears to be reasonable. My view is that since that is the standard that is used in sentencing, that I must review the evidence in the case that was admitted and make

thus determined a base offense level of 32.[6] Martinez now claims that the base offense level should be 12 under U.S.S.G. § 2E1.3(a)(1). To give due deference to a district court's application of the sentencing guidelines, we review factual determinations for clear error and legal questions *de novo.* *United States v. Blake,* 81 F.3d 498, 503 (4th Cir.1996); *United States v. Singh,* 54 F.3d 1182, 1190 (4th Cir.1995).

■ We find no error in the district court's calculations. Martinez argues that conspiracy to commit murder cannot constitute the underlying crime because he was acquitted on the murder counts in this case. An acquittal on particular counts, however, does not prevent the district court from using those offenses in computing the applicable sentencing guidelines. See *United States v. Kimberlin,* 18 F.3d 1156, 1160 (4th Cir.), *cert. denied,* 513 U.S. 843, 115 S.Ct. 131, 130 L.Ed.2d 74 (1994); *United States v. Isom,* 886 F.2d 736, 738–39 (4th Cir.1989); *United States v. Bernard,* 757 F.2d 1439, 1444 (4th Cir.1985). Accordingly, Martinez's appeal on this issue fails.

## VI.

■ The defendants' final assignment of error is also without merit. Cox argues that the district court erred in deferring its determination of his ineffective assistance of counsel claim and his request for a downward departure to post-conviction collateral review. We review *de novo* a district court's ruling on whether a factor is a permissible basis for departing from the sentencing guidelines as a question of law. *Koon v. United States,* 518 U.S. 81, ——–——, 116 S.Ct. 2035, 2046–48, 135 L.Ed.2d 392 (1996).

■ Cox claims that the misinformation trial counsel gave him about the sentencing guidelines during plea discussions was so incorrect as to distort his choice and undermine his ability to make an intelligent decision about whether to plead guilty. The claim is that trial counsel believed that Cox's exposure under the guidelines was 170 months (15 years), but that Cox's actual exposure was 270 months (22–1/2 years). The plea offer involved mentioned a sentence of 132 months (11 years) assuming a three-level downward adjustment for acceptance of responsibility. Cox says he would have accepted the government's plea offer had his trial counsel accurately predicted his exposure.

■ A defendant can raise the claim of ineffective assistance of counsel in three ways: (1) in a motion for a new trial based on anything other than newly discovered evidence; (2) on direct appeal if and only if it conclusively appears from the record that his counsel did not provide effective assistance; or (3) by a collateral challenge pursuant to 28 U.S.C. § 2255. *Smith,* 62 F.3d at 650–51.

my own determination as to the crime of violence that I find Mr. Martinez to have committed as relevant conduct by a preponderance of the evidence.

Although I am entirely sympathetic to Mr. Ticknor's arguments, I was here during the trial, I read the transcripts, I reviewed the tapes, I heard the tapes, and I believe that the crime that Mr. Martinez conspired to commit was not simply a robbery of Messrs. Pluck and Prince but was a robbery and a murder. That he was on board, conspired to commit, agreed to commit a robbery and a murder. Their mission in coming to Baltimore was to rob and murder, and that is what I believe Mr. Martinez agreed and conspired to do.

**6.** The district court began with U.S.S.G. § 2X1.1(a), governing attempt, solicitation, and conspiracy. This guideline says that the base offense level shall be determined "from the guideline for the substantive offense." Application Note 2 to this section indicates that the term

"substantive offense" "means the offense that the defendant was convicted of soliciting, attempting or conspiring to commit." The court thus turned to U.S.S.G. § 2E1.3, entitled "Violent Crimes in Aid of Racketeering Activity" and relating to 18 U.S.C. § 1959. This is the substantive offense Martinez was convicted of conspiring to commit. Section 2E1.3 provides that the base offense level for this offense is the greater of either 12 or "the offense level applicable to the underlying crime or racketeering activity." The meaning of "underlying crime" is different from the definition of "substantive offense" found in the commentary to § 2X1.1. U.S.S.G. § 1B1.3 instructs that a guideline specifying more than one base offense level "shall be determined" on the basis of "all acts and omissions committed ... that occurred during the commission of the offense of conviction." In light of this instruction, the district court found that the underlying crime was conspiracy to commit murder and accordingly determined a base offense level of 32 under U.S.S.G. § 2A1.5(a) and (b)(1).

Rather than pursue these typical avenues of redress, Cox raised the issue as a ground for departure under U.S.S.G. § 5K2.0. Cox contends that the difference between his exposure as predicted by counsel and his actual exposure demonstrates prejudicial error on trial counsel's part. He therefore claims the record supports a downward departure to place him "in the position he would have been, had he received reasonably competent advice from his attorney."

A district court may depart from the guidelines range when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. Departure factors under the guidelines are either "forbidden," "encouraged," "discouraged," or "unmentioned." *United States v. Rybicki*, 96 F.3d at 754, 757 (4th Cir.1996). The Sentencing Commission expects departures based on "unmentioned" factors to be "highly infrequent." *Koon*, 518 U.S. at —— ——, 116 S.Ct. at 2044–46 (quoting U.S.S.G. ch. 1, pt. A, cmt. 4(b)). If a district court is permitted to depart from the guidelines on the basis of ineffective assistance of counsel, it would constitute one of these highly infrequent "unmentioned" factors.

■ We are of opinion that a downward departure based on ineffective assistance of counsel is impermissible because it would be inconsistent with the structure and theory of the relevant guidelines. See *Koon*, 518 U.S. at —— ——, 116 S.Ct. at 2044–46. The Sentencing Reform Act suggests that which constitutes appropriate sentencing concerns. It refers to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Counsel's competency cannot fairly be characterized as relating to either of these concerns. Since such a departure would not be consistent with the purposes of the sentencing guidelines, we conclude that the district court did not err in deferring Cox's ineffective assistance of counsel claim. See *United States v. Hoyle*, 33 F.3d 415, 418 (4th Cir.1994), *cert. denied*, 513 U.S. 1133, 115 S.Ct. 949, 130 L.Ed.2d 892 (1995) (stating

that ineffective assistance of counsel claim normally is best left to collateral review). In a case on similar but not the same facts as here, the Ninth Circuit has reached the same conclusion as do we. See *United States v. Crippen*, 961 F.2d 882, 885 (9th Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 438, 121 L.Ed.2d 358 (1992).

Accordingly, the judgment of the district court is

*AFFIRMED.*

NIEMEYER, Circuit Judge, concurring:

I concur in the opinion on all parts except for part II, and on part II, I concur only in the judgment.