UNITED STATES of America

v.

Gary PRICE Defendant.

No. CR. 99–348(TPJ).

United States District Court,
District of Columbia.

Dec. 17, 2002.

Paul Lawrence Knight, Washington, DC, for Gary Price.

Peter Robert Zeidenberg, Anjali Chaturvedi, U.S. Attorney's Office, Washington, DC, for U.S.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

The defendant Gary Price is currently before the Court for sentencing following his conviction by a jury in July, 2001, for conspiracy to possess and distribute marijuana.

### I.

The Court accepts the findings and conclusions presented in the Presentence In-vestigation Report, as revised February 20, 2002, including the report writer's calculation of the Total Offense Level of 37, Criminal History Category of VI, and thus a Guideline Sentencing Range of 360 months to life imprisonment.

The Court rejects the contention that Price's criminal history category significantly over-represents that history. Price, aged 33 when arrested on this charge, had an extensive criminal record dating from his juvenile years, including the two prior drug distribution convictions as an adult that compel his designation as a career offender under U.S.S.G. § 4B1.1. Moreover, the evidence at trial demonstrated clearly that Price *is* a career criminal. He was shown to have been a regular among the K Street drug dealers more or less continuously from the early 1990s on.

The Court also rejects any suggestion of an improper "manipulation" of the indictment by the government. In the indictment the grand jury dated the inception of the K Street conspiracy as of 1988. Thus, Price's 1987 felony drug convictions stood as prior offenses, to be counted as such for sentencing purposes if he were convicted, whether he pled to the indictment, were tried alone or with his original two co-defendants, or, as ultimately came to pass, joined as one of many defendants in the principal K Street Crew case. Finally, the Court concludes that all findings as to drug quantities necessary to conviction and sentencing were made by the jury in conjunction with its verdict; any additional findings by the Court would be superfluous in light of Price's status as a career offender.

The sole issue remaining to be resolved in connection with the sentence to be imposed, which is otherwise foreordained by the United States Sentencing Guidelines, is predicated in the main upon

the argument of *amicus curiae* (and now successor defense counsel) Paul L. Knight, Esq. to the effect that Mr. Price was ineffectively represented by original defense counsel Jonathan Zucker, Esq., in relation to pre-trial plea negotiations. Mr. Knight contends that Price was ill-served by his attorney at the only genuine opportunity afforded him in the course of this case to avoid the sentence which now appears inevitable.

Price was scheduled to go to trial with two co-defendants, Paul Taylor and Anton Gethers, on June 6, 2000, in a satellite prosecution growing out of the principal K Street Crew case. Plea bargaining had reached a critical stage by mid-May, when the government had extended "wired" offers to all three defendants for stipulated sentences pursuant to Fed.R.Crim.P. 11(e)(1)(C). All three offers could be deemed extraordinarily lenient in light of the statutory mandatory minimum sentence of 10 years required upon conviction, the offer to Price being the most lenient of all: 30 months, with a "boot camp" recommendation and self-surrender privileges. The two co-defendants promptly accepted. Price (or his lawyer) equivocated. At the time, Mr. Zucker knew that Price was *de facto* and *de jure* a "career offender" as that term is used in the Sentencing Guidelines; he knew that the plea offer would be withdrawn if the co-defendants both pled guilty, leaving Price as the only holdout; and he knew that the government would then move to join Price to the principal K Street Crew case to avoid two trials of the same complex conspiracy charge, in one of which Price would be the sole defendant.

Price himself knew only that if things went drastically wrong for him, there was a possibility that he could get a life sentence.

In the course of pretrial plea negotiations Price had been forcefully told (in his lawyer's presence) by prosecutors and law enforcement officers that were he to be convicted he would in all probability receive a sentence of 30 years to life. He was urged to become a co-operator, which he declined to do because he professed to know nothing about the K Street Crew's violent activities. Price listened to the government's proffer and watched the videotapes of his drug sales. He then considered his options in private with his attorney, after which he apparently remained unconvinced of his vulnerability to a long prison sentence.

Notwithstanding his extensive prior criminal record, Price had never before been charged with a drug felony in *federal* court. He had, therefore, never before encountered the complexities of mandatory minimum sentences for federal drug crimes under Title 21 of the U.S.Code, or of the essentially mandatory nature of the Sentencing Guidelines. His prior experience in D.C. Superior Court had taught him to expect minimal sentences, if any, for distribution of small quantities of marijuana, and it was in the context of that experience that Price evaluated his options when offered the chance to plead.

In the circumstances it was absolutely necessary that his lawyer be absolutely certain Price understood not only that 21 U.S.C. § 846, 841(b)(1)(A)(vii) called for a *minimum* sentence upon conviction of ten years, but that Price also understood the significance of his "career offender" status and an equally mandatory 30–years–to–life sentence under the Sentencing Guidelines. He also needed to understand as well that an acquittal was as far from assured as the potential sentence upon conviction was certain. Mr. Zucker altogether failed him in that regard.

Despite the efforts of prosecutors and law enforcement personnel, (and eventually the Court) to convince Price of the risks

of a trial and conviction, the Court is persuaded that the advice upon which Price ultimately declined the government's two successive lenient plea offers was Mr. Zucker's advice to him early on (and never repudiated), and which Price believed was consistent with and confirmed by his extensive experience in D.C. Superior Court, that he stood a "50–50 chance" of acquittal whether tried alone or with others, and that he could realistically expect a sentence of "around 4 to 5 years" if convicted.

At a series of status conferences in late May, 2000, as the transcripts make clear, Price twice personally rejected, on the record, two plea offers made him by the government: first, a Fed.R.Crim.P. 11(e)(1)(C) offer of a 30–month sentence, with a recommendation of boot camp and self-surrender, and second, an offer of a 42–month sentence after the first offer had been withdrawn. On May 18, 2000, after the Court itself had urged him to reconsider (as it turns out he did) Price left the courtroom comprehending, for the first time, that his sentence might even be beyond the power of the judge to alter, and that life in prison might be more than a remote possibility for him. By May 26th, when Price rejected the second offer, he had been convinced once again to the contrary.

The post-conviction sentencing hearings of October 30–31, 2002, revealed that, perhaps more than most defendants, Gary Price reposed confidence in his attorney. As Mr. Zucker himself acknowledged, Price was an unsophisticated client for whom explanations did not necessarily lead to understanding. (Tr. of 10/31/02, pp. 2–3). What Price acted upon was what Mr. Zucker, subverting his own last-minute

recommendations to take the first offer, had consistently told him from first to last: that what the government could prove did not amount to a conspiracy so he was, in fact, innocent; that he had a "50–50 chance" of acquittal if he stood trial; and that he could realistically expect a sentence of four to five (or six) years upon conviction. (Tr. of 10/30/02, pp. 43–44; Tr. of 10/31/02, pp. 37–38). That advice was wrong. Among its myriad flaws, the most tangible is its failure to inform Price that the statute itself mandates a minimum prison sentence of ten years upon conviction. *See* 21 U.S.C. § 846, 841(b)(1)(A)(vii). Yet another fault is in its failure to convey the essentially equally mandatory character of the Sentencing Guidelines, and of the ominous significance, for Price's purposes, of the "career offender" designation, whatever quantity of marijuana Price may have personally distributed. Price's sentence would not, as Mr. Zucker opined, be "weight-driven." (Tr. of 10/31/02, p. 3).

As the October, 2002, hearings revealed as well, Mr. Zucker also manifestly disserved his client in failing to notify the prosecutor promptly, at a time within which the first plea offer was to remain open, that Price had actually instructed Mr. Zucker to accept it. (Tr. of 10/30/02, p. 47). Mr. Zucker allowed the critical deadline event to pass the guilty pleas of Price's two co-defendants- and a weekend to elapse before even contacting the prosecutor. When the second offer was extended, Mr. Zucker dissuaded Price from accepting it on the ground that the government had been "unfair" in withdrawing the first offer,[1] and the second offer was

---

1. The law is clear that, whether or not it is "fair," the government may revoke a plea offer at any time until the guilty plea is entered and accepted by the court. *See United States v. Papaleo*, 853 F.2d 16, 18–20 (1st Cir.1988); *see also Mabry v. Johnson*, 467 U.S. 504, 506–07, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

little better, if at all, than what he could expect to get if he went to trial and lost.

At the Court's importuning the government had reopened plea negotiations, extending Price a new offer of 42 months' imprisonment. Once again Price rejected it, on the record in open court. Although in each instance of Price's rejection of a plea offer the record supports the conclusion that Price himself made the final decision, he did so upon the basis of the same erroneous advice Mr. Zucker had given him earlier in relation to the first offer. In that regard, the record also makes clear that it was Mr. Zucker's mistaken belief from the beginning that the government had no evidence of a conspiracy, at least as to Price, and that the most the government could prove was that Price had engaged in multiple hand-to-hand streetside marijuana sales for his own personal benefit.

## II.

Effective assistance of counsel is, of course, a constitutional requirement for a defendant at all stages of a criminal case, from pre-trial plea negotiations through sentencing. Under the familiar *Strickland v. Washington* test, however, unless counsel's performance is so deficient as to fall below "an objective standard of reasonableness," and the deficiency is so "prejudicial" in the sense that there is a "reasonable probability that...the result of the proceeding would have been different," *Strickland*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant is entitled to no relief from the consequences.

■ The D.C. Circuit has held that a Sixth Amendment violation can be predicated upon counsel's defective representation of a defendant in connection with pre-trial plea bargaining, and that, under *Strickland*, prejudice can be established if there is a reasonable probability that a guilty plea would have ensued, i.e., that wired co-defendants would also have pleaded guilty (or been unwired) and the defendant's own plea would have been accepted by the court. *United States v. Gaviria*, 116 F.3d 1498, 1511–13 (D.C.Cir.1997); *see also United States v. Day*, 969 F.2d 39 (3d Cir.1992).

Upon this record, the Court concludes that Price has satisfied both components of the *Strickland* test: First, he has shown his lawyer to have made errors "so serious that [he] was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment," 466 U.S. at 687, 104 S.Ct. 2052, and, second, that there is more than a "reasonable probability" that, but for counsel's unprofessional errors, the result would have been different. *Id.* at 694, 104 S.Ct. 2052. This Court made apparent its intention to accept Price's plea offer indeed had urged Price to take it on May 18th- and in fact accepted comparable pleas of Price's co-defendants the following day.[2]

■ The question thus becomes the relief to which Price is entitled. Some relief is in order. *See Glover v. United States*, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); *U.S. v. Day, supra*, 969 F.2d at 44–45. In *Day* the Third Circuit considered a number of possible approaches open to a sentencing court, including specific enforcement of the hypo-

---

**2.** The government argues that Price has never to this date admitted his guilt, and his attempt at a guilty plea would not have survived a Fed.R.Crim.P. 11 colloquy.

Price's failure to make a formal confession of guilt, however, originates once again in Mr.

Zucker's erroneous assessment of the government's evidence, from which *the Court* is satisfied that there existed a factual basis for a plea of guilty had matters reached that stage. *See* Fed.R.Crim.P. 11(f).

thetical plea bargain, reopening plea negotiations, or a retrial, endorsing or rejecting none but observing that the district court "would have considerable discretion in fashioning a remedy appropriate under the circumstances." *Id.* at 47. Quoting from *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), the Third Circuit said the remedy "should be tailored to the injury suffered and should not unnecessarily infringe on competing interests." *Day,* 969 F.2d at 47.

One possibility in this case would be to order a new trial upon motion pursuant to Fed.R.Crim.P. 33. Counsel's constitutionally defective performance did not, however, extend to the trial itself,[3] and to order a new trial here would impose the burden of counsel's errors entirely on the government which was in no respect at fault. A second option might be to impose a sentence consistent with one or more of the spurned plea offers, but once again the penalty for defense counsel's dereliction would thereby be visited on the government, and would, moreover, be tantamount to specific enforcement of an executory bargain that never matured into a binding plea.

Yet a third possibility is a downward departure in defendant's Criminal History Category or Offense Level. Although it appears that the D.C. Circuit has yet to consider the issue, at least three other federal appellate courts have held that substandard legal representation, even when amounting to prejudicial ineffective assistance of counsel of constitutional proportions in conjunction with pre-trial plea bargaining, is not a legitimate ground for a downward departure under U.S.C. § 3553(b) and U.S.S.G. § 5K2.0. *See United States v. Bicaksiz,* 194 F.3d 390, 397–98 (2d Cir.1999); *United States v. Martinez,* 136 F.3d 972, 979–80 (4th Cir.1998); *United States v. Crippen,* 961 F.2d 882, 883–85 (9th Cir.1992). There are apparently no appellate decisions to the contrary.[4]

 In this case, however, the Guidelines have been rendered essentially irrelevant: No rational basis appears to the Court to depart downward in any particular order of magnitude consistent with the Guidelines, yet it is clear that the defendant Gary Price is a victim of a Sixth

---

3. During the six-month trial that ensued, however, Mr. Zucker also eschewed conventional wisdom among defense lawyers as to appropriately representing a peripheral defendant joined with multiple more culpable co-defendants. Instead of rendering himself and his client as inconspicuous as possible in the minds of the jurors, Mr. Zucker mounted a vigorous defense against the entire government case, extensively cross-examining many prosecution witnesses who had never implicated Price in their direct testimony. To the extent the jury may have equated the extent of Price's involvement in the conspiracy with the extent of his lawyer's efforts to discredit virtually every government witness, their impression of Price must have been one of an integral member of a conspiracy who was simply never caught in a provable act of violence.

4. In *United States v. Soto,* 132 F.3d 56 (D.C.Cir.1997), the D.C. Circuit held defense counsel's failure to request an obvious departure *at sentencing* to be ineffective assistance sufficient to warrant remand for resentencing. *See also Glover v. United States,* 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).

One possible conventional ground for departure appears from this record. In the context of the totality of the criminal activity committed by the K Street Crew, Gary Price was clearly a minor participant and entitled to a two-level decrease in his Offense Level calculation. *See* U.S.S.G. § 3B1.2(b). The reduction in the Guideline range produced thereby is, however, relatively trivial.

A two-level downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1, is precluded by Price's refusal, once again on the advice of Mr. Zucker, to make a statement to the Presentence Investigation Report writer.

Amendment violation requiring some re-dress. The Court will thus impose the minimum statutorily permissible sentence, namely, 120 months, pursuant to 21 U.S.C. § 846, 841(b)(1)(A)(vii), as representing a fair and just compromise sentence in the circumstances.

ORDERED, that the defendant Gary Price be committed to the custody of the U.S. Bureau of Prisons for a term of 120 months, to be followed by a five-year term of supervised release, and the Judgment and Commitment shall be entered accordingly.