**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 06-4787**

—————————

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

LUTHER EARL SATTERFIELD,

                                        Defendant - Appellant.

—————————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   James C. Dever III,
District Judge.  (5:04-cr-00173-D)

—————————

Submitted:  September 28, 2007       Decided:  November 8, 2007

—————————

Before MICHAEL and MOTZ, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

—————————

Affirmed by unpublished per curiam opinion.

—————————

Mary Jude Darrow, Raleigh, North Carolina, for Appellant.  George
E. B. Holding, United States Attorney, Anne M. Hayes, Jennifer P.
May-Parker, Assistant United States Attorneys, Raleigh, North
Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Luther Earl Satterfield appeals his conviction and sentence for conspiring to distribute and possess with the intent to distribute more than fifty grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1), 846 (2000) and distribution of more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). On appeal, Satterfield argues that the district court plainly erred by not dismissing the charges against Satterfield on statutory or constitutional speedy trial grounds and by admitting evidence of a kidnapping committed by Satterfield's drug trafficking associates, abused its discretion by refusing to give a requested supplemental instruction in response to a jury question regarding Fed. R. Crim. P. 35, and clearly erred by applying a two-level sentencing enhancement for being an organizer or manager pursuant to U.S. Sentencing Guidelines Manual § 3B1.1(c) (2005) (USSG). Finding no error, we affirm.

Satterfield asserts for the first time on appeal a speedy trial violation in the district court; therefore the claim is reviewed for plain error. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). Satterfield's brief primarily asserts a statutory speedy trial error, and makes a short reference in closing to violation to his constitutional speedy trial rights.

Under the Speedy Trial Act, an indictment must be filed within thirty days from the date on which a defendant is arrested, 18 U.S.C. § 3161(b) (2000), and the trial must commence within seventy days of the filing date of the indictment or the date of a defendant's initial appearance, whichever is later. 18 U.S.C.A. § 3161(c)(1) (West 2000 & Supp. 2007). Certain delays are excludable when computing the time within which a defendant must be indicted or his trial must commence. 18 U.S.C. § 3161(h)(1)-(9) (2000). Satterfield argues that his indictment should be dismissed. However, because Satterfield did not object to the alleged violation of the Speedy Trial Act prior to the trial commencing, he is deemed to have waived the right to dismissal of the indictment. 18 U.S.C. § 3162(a)(2) (2000). Satterfield argues that even if he waived his statutory right to a speedy trial, the district court had a duty sua sponte to reject the waiver and dismiss the indictment. However, where the Speedy Trial Act violation is completed prior to trial or the entry of a guilty plea, the defendant is deemed to have waived the completed violation by declining to move to dismiss the indictment. See Zedner v. United States, 126 S. Ct. 1976, 1986 (2006).

To the extent Satterfield claims his Sixth Amendment right to a speedy trial was violated, this claim is without merit. In determining whether a pretrial delay violated a defendant's Sixth Amendment right, a court must balance four considerations:

(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the extent of prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). The Supreme Court has explained that the first factor actually involves two inquiries. Doggett v. United States, 505 U.S. 647, 651-52 (1992). The first question is whether the delay is sufficient to trigger a speedy trial inquiry. The Court has answered this question affirmatively when the delay approaches one year. Id. at 651-52 & n.1. Second, courts must consider, together with other relevant factors, "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Id. at 652. The delay between the return of Satterfield's indictment and his trial was approximately seventeen months, and is sufficient to trigger the speedy trial inquiry. See Doggett, 505 U.S. at 651-52.

In order to prevail on his claim, Satterfield must establish "that on balance, [the] four separate [Barker] factors weigh in his favor." United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995). First, the seventeen-month delay was certainly lengthy, perhaps uncommon, but is not an extraordinary delay. Second, the reason for the delay appears to be mostly related to Satterfield's strategy to wait for the United States v. Booker, 543 U.S. 220 (2005), decision and the eventual fallout of legal precedent interpreting the landmark case. Satterfield does not

- 4 -

dispute that the Government attempted to contact him several times to ascertain whether he intended to plead guilty or proceed to trial once he withdrew his guilty plea. Third, Satterfield never asserted his right to a speedy trial prior to raising the argument on appeal. Finally, although Satterfield alleges prejudice due to loss of his liberty and alleged inability to litigate his case, he does not establish any particularized prejudice, such as loss of witnesses or specific indication of witness memory loss. We therefore conclude that Satterfield has not established a statutory or constitutional speedy trial error.

Next, Satterfield argues that the district court erred by admitting evidence regarding a kidnapping of Stevie Hester by Satterfield's co-conspirators. He argues that the evidence was "unfairly prejudicial and monopolized the trial," and was impermissible under Fed. R. Evid. 403. Satterfield did not object at trial to the admission of evidence about his co-conspirators' commission of a kidnapping. Therefore, review is for plain error. See Olano, 507 U.S. at 731-32.

Rule 403 excludes otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. "Prejudice, as it is used in Rule 403, refers to evidence that has an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional

one." United States v. Queen, 132 F.3d 991, 994 (4th Cir. 1997) (internal quotation marks and citations omitted). "The mere fact that the evidence will damage the defendant's case is not enough — the evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence." United States v. Hammoud, 381 F.3d 316, 341 (4th Cir. 2004) (en banc) (internal quotation marks and citations omitted), vacated on other grounds, 543 U.S. 1097 (2005).

"Rule 403 judgments are preeminently the province of the trial courts. We thus review a district court's admission of evidence over a Rule 403 objection under a broadly deferential standard." United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998) (internal quotation marks and citations omitted). The district court's ruling is overturned only under extraordinary circumstances, where the district court's discretion has been plainly abused, and it acted arbitrarily or irrationally. United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990). The evidence is reviewed in the "light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." Id. (internal quotation marks and citations omitted).

Satterfield objects to the weight of the evidence and cites to multiple pages of testimony to establish undue prejudice. However, defense counsel elicited the bulk of the evidence regarding the kidnapping. In addition, on appeal Satterfield

contests the testimony his attorney elicited on direct and re-direct examination of his own witness, Stevie Hester, and objects to Hester's testimony on cross-examination by the Government. In his closing argument, Satterfield argued that Hester's testimony proved that co-conspirator William Perry was not a credible witness and therefore his testimony regarding all conspiracy events should be discounted.

As the foregoing facts demonstrate, Satterfield engaged in repeated questioning as to the kidnapping and presented his own witness to elicit evidence regarding the kidnapping. He therefore should not be allowed to benefit through his own invited error. See United States v. Neal, 78 F.3d 901, 904 (4th Cir. 1996) (explaining invited error).

Regardless, there is no Rule 403 error, plain or otherwise, as the kidnapping evidence was relevant because it was probative of Satterfield's drug distribution activities within the conspiracy. The Government's intention was to prove that Satterfield distributed to other conspiracy members. The evidence was not unduly prejudicial because Satterfield himself elicited most of it as part of his trial strategy.

Finally, Satterfield assigned error to the district court for failing to weigh the probative value of the evidence by the danger of unfair prejudice. The district court did not err in this

regard because it is not required to weigh the evidence under Rule 403, sua sponte, if there is no objection made by counsel.

Next, Satterfield challenges the district court's response to a jury question. In response to the jury's question of "What is Rule 35," the court declined defense counsel's invitation to read or supply the text of Rule 35(b) to the jury. Instead, the court answered the question directing the jury to make their decision "based on the evidence presented in this case and my jury instructions considered as a whole. . . . It is up to you to remember what evidence has been presented in this case concerning Rule 35 and consider such evidence in the context of all of the evidence and my jury instructions considered as a whole." (J.A. 951). In its initial jury instructions, the court advised the jury that the testimony of individuals who have entered into plea agreements should be "received with caution and weighed with great care." (J.A. 911).

The necessity, extent, and character of supplemental jury instructions are a matter within the discretion of the district court and should be reviewed for an abuse of discretion. <u>United States v. Horton</u>, 921 F.2d 540, 547 (4th Cir. 1990). We have held that when evaluating the adequacy of supplemental jury instructions given in response to a question asked by the jury during deliberations, it must ask "whether the court's answer was reasonably responsive to the jury's question and whether the

original and supplemental instructions as a whole allowed the jury to understand the issue presented to it." See Taylor v. Virginia Union University, 193 F.3d 219, 240 (4th Cir. 1999) (quoting United States v. Stevens, 38 F.3d 167, 170 (5th Cir. 1994)); see also United States v. Martinez, 136 F.3d 972, 977 (4th Cir. 1998) (holding that the proper inquiry when examining a district court's response to a jury's request for clarification on a charge is whether the court addresses the jury's inquiry fairly and accurately without creating prejudice).

Satterfield argues that the district court's refusal to provide the jury with a definition of Rule 35, or with the text itself, prejudiced him. During trial, defense counsel argued that the witnesses may receive additional reduction of their sentences, and questioned witnesses regarding the possibility of future reductions. Defense counsel made an issue of the Government witnesses' credibility and contends that the jury could not fully evaluate credibility without understanding the mechanism for a further reduction of sentence after Satterfield's trial. The Government contends that the court did not abuse its discretion because merely providing the text of Rule 35 would have been confusing to the jury, the proper inquiry was the witnesses' understanding of the benefits of cooperation, and therefore Satterfield's ability to conduct his defense was not impaired.

We conclude that the district court's supplemental jury instruction was adequate. The original instruction, coupled with the supplemental instruction, allowed the jury to understand that witness testimony by a co-conspirator, or someone who has entered into a plea agreement with the Government, should be weighed with care because of the inducements of sentence reduction. On cross-examination of the Government's witnesses, defense counsel elicited testimony regarding the expectations of sentence reduction, which was the key consideration. The legal terminology of Rule 35 was not relevant compared with the witnesses' understanding of the possibility of further sentence reduction in exchange for cooperation. Therefore, the court addressed the jury's inquiry fairly and accurately without creating prejudice. See Martinez, 136 F.3d at 977.

Last, Satterfield received a two-level sentencing enhancement pursuant to USSG § 3B1.1(c) for being an organizer, leader, manager or supervisor of criminal activity. He challenges the court's factual finding that he was a leader or manager claiming that he was acting alone and did not exert any managerial control or supervise others.

The district court's determination that the defendant's conduct warrants a sentence enhancement is reviewed for clear error. United States v. Sayles, 296 F.3d 219, 224 (4th Cir. 2002). A defendant qualifies for a two-level role adjustment if he was a

leader, organizer, manager, or supervisor in any criminal activity that did not involve five or more participants and was not otherwise extensive. Id.; USSG § 3B1.1(c). For a role adjustment to be given because a defendant was a leader, the defendant must have controlled others. United States v. Carter, 300 F.3d 415, 426 (4th Cir. 2002).

The district court determined that Satterfield controlled how drugs were distributed to his dealers Oakley, Perry, Terry, and Thorpe. The court specifically found that fronting cocaine to another dealer was indicative of control. In this matter, the evidence contained in the PSR demonstrated that Satterfield exercised control over several associates in the distribution of cocaine base. He not only distributed to at least four individuals as identified by the district court, but Oakley and Perry testified that he occasionally engaged runners to deliver the drugs. The evidence also showed that Satterfield fronted drugs to others. Accordingly, we conclude that the district court did not plainly err in its application of § 3B1.1.

We therefore affirm the judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED