**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5088**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

MAURICE TAFT GIBSON, a/k/a Mo,

            Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield.  David A. Faber, Senior District Judge.  (1:05-cr-00126-1)

Argued:  March 27, 2009                    Decided:  May 26, 2009

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jay Thornton McCamic, MCCAMIC, SACCO, PIZZUTI & MCCOID, PLLC, Wheeling, West Virginia, for Appellant.  Miller A. Bushong, III, OFFICE OF THE UNITED STATES ATTORNEY, Beckley, West Virginia, for Appellee.  **ON BRIEF:** Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Maurice Gibson on fifteen counts of conspiracy to traffic in cocaine and oxycodone, drug trafficking, conspiracy to launder money, and money laundering. On Gibson's motion for a new trial, the district court granted the motion as to three counts based on the government's failure to disclose pretrial statements of a co-conspirator that were inconsistent with the co-conspirator's testimony at trial. With respect to the remaining 12 counts, the district court sentenced Gibson to 240 years' imprisonment. The government elected not to retry Gibson on the three counts and dismissed them.

Gibson contends on appeal that (1) the district court abused its discretion in denying his motion for a mistrial when he discovered that a DEA Special Agent allegedly testified falsely and, after the verdict was rendered, his motion for a new trial based on the same ground; (2) the district court abused its discretion in denying his motion for a new trial on all counts based on a Brady and Jencks Act violation committed in connection with the testimony of a co-conspirator; (3) the district court erred in sentencing by applying the first degree murder cross-reference under U.S.S.G. §§ 2D1.1(d) and 2A1.1 and in finding facts under the preponderance-of-evidence standard in doing so; and (4) the district judge abused his discretion in denying Gibson's motion to recuse the judge.

For the reasons that follow, we reject Gibson's arguments and affirm.

I

Gibson's convictions grew out of a year-long investigation that produced hours of audio and video recordings of drug transactions between Gibson and a cooperating individual, Mike White, who owned a tattoo parlor frequented by Gibson and his co-conspirators. A majority of the controlled buys took place in the tattoo parlor where police were able to view the transactions in real time through a security camera placed near the ceiling. At the same time, they wired White with an audio-video device called a "Hawk." The "Hawk," however, did not transmit in real time but recorded the information for later retrieval.

After a rumor surfaced that White was cooperating with the police, he was murdered in front of his tattoo parlor. Police suspected Gibson's involvement but never charged him with the murder. The district court, however, enhanced Gibson's sentence based on the court's finding that Gibson ordered the murder. Based on that finding, the district court sentenced Gibson to 20 years' imprisonment on each of the twelve counts of conviction, to run consecutively, for a total of 240 years' imprisonment. This appeal followed.

3

Gibson first contends that the district court abused its discretion in denying his motion for a mistrial, made during trial, and his motion for a new trial made after the verdict was returned, both of which were based on the allegedly false testimony of DEA Special Agent E. H. Kennedy. Agent Kennedy testified that Mike White, the cooperating individual, did not know that the "Hawk" device that he was wearing had a video component in addition to its audio component. Kennedy said that not only did he not tell White that the "Hawk" recorded video content, but he also explained that it was his regular practice not to advise cooperating individuals of that fact in order to better monitor the informant and ensure the quality of the evidence being obtained about the drug transaction.

Following Kennedy's testimony, during a recess of the trial, counsel for the government directed defense counsel's attention to two documents that had been produced to Gibson during pretrial discovery. The documents were handwritten law enforcement summaries of controlled buys, which were written by law enforcement officers and signed by White. One of the documents contained a statement that White had been given "an audio/video recorder" by one of the detectives.

Gibson moved for a mistrial based on the inconsistency of Kennedy's testimony and the documents and on the fact that

counsel to the government had not brought the documents to Gibson's attention earlier. The district court denied the motion. When Gibson raised the same point after the verdict through a motion for a new trial, the court again denied the motion. The court found that Special Agent Kennedy did not testify untruthfully and that the documents did not conclusively establish that Kennedy knew White was told about the video component of the "Hawk." The documents were prepared by another law enforcement officer and were ambiguous since White was also being recorded by a fixed video camera. The video reference could have been understood to be referring to that camera. The court also found that Gibson's failure to identify the potentially inconsistent documents was not the fault of the government since the government provided Gibson with the documents before trial, early in the discovery process. Finally, the court noted that Gibson was still able to present his argument, through cross-examination, that White might have been aware of the camera or could have "swapped" the items given to him by Gibson for other items outside the view of the camera during the controlled buy.

We conclude that the district court did not abuse its discretion in denying Gibson's motions. The point of Agent Kennedy's testimony was not central to the case as a whole. Moreover, the video from the "Hawk" was one of two sources of

5

video for each of the transactions, possibly rendering the summary document consistent with Kennedy's testimony. And even if the testimony and the document were somewhat inconsistent, they both could be true. White could not read and write well, and Agent Kennedy did not write the statement which included the reference to the video component of the "Hawk." Thus, these were matters for the jury to resolve, not a basis to overrule the district court's decision not to grant a mistrial or a new trial. In addition, even if the district court rulings were an abuse of discretion, Gibson failed to show that they affected the validity of the judgment. See United States v. Nyman, 649 F.2d 208, 212 (4th Cir. 1980).

III

Gibson also contends that the district court abused its discretion in denying his motion for a new trial based on a Brady violation and Jencks Act violation. Gibson contends that the government violated its disclosure obligations by failing to produce pretrial statements of Christina Arnoto, a co-conspirator, whose testimony turned out to be at odds with the undisclosed statements.

Arnoto testified at trial that she introduced White to Gibson; that she was good friends with both; and that she bought drugs from Gibson on more than one occasion. She also testified

that she knew Gibson was a drug dealer as early as 1998. This testimony proved to be inconsistent with statements that Arnoto had given earlier to law enforcement officers on the day White was murdered. In those statements, Arnoto denied knowledge of Gibson's drug dealing and denied her involvement in any drug dealing.

Arnoto's statements were first provided to Gibson after trial and before sentencing as part of the discovery relating to White's murder, and thus defense counsel did not have them to impeach Arnoto during the trial. After reviewing the statements, Gibson filed a motion for a new trial. In response, the government acknowledged it should have disclosed Arnoto's prior statements earlier and asserted that its error was not deliberate. It argued, however, that the statements were immaterial to the outcome on the counts with respect to which Arnoto gave her testimony.

The district court granted in part and denied in part Gibson's motion. It rejected his assertion that the nondisclosure was a Brady violation because Gibson failed to show that the results of the trial would have been different had the statements been provided earlier. With respect to the Jencks Act violation, however, the court concluded it could not find that the defendant suffered no prejudice on account of the nondisclosure. The court accordingly granted Gibson's new trial

7

motion with respect to the three counts on which Arnoto provided testimony, namely the conspiracy count, and two counts dealing with discrete drug transactions. The government thereafter chose not to retry Gibson on those counts, agreeing to dismiss them with prejudice.

We conclude that the district court did not abuse its discretion in making these rulings. See Strickler v. Greene, 527 U.S. 263, 280-81 (1999) ("not every violation of [the duty to disclose] necessarily establishes that the outcome was unjust"). As the Supreme Court noted in the similar circumstances in Strickler, even if the witness could have been severely impeached with the pretrial statements had they been disclosed, "the record provides strong support for the conclusion that petitioner would have been convicted of capital murder and sentenced to death." Id. at 294. Moreover, in remedying the Jencks Act violations, the district court actually granted Gibson's motion, resulting in the dismissal of three counts. Given the vast amount of evidence available to support the convictions on the remaining twelve counts, which were not directly addressed by Arnoto's testimony, one cannot reasonably conclude that the statements would have made a difference to the jury's analysis on the remaining counts. Arnoto was a key witness for only three counts, and the government presented her

testimony only to prove those three counts.  Accordingly, we conclude that the district court did not abuse its discretion.

IV

Gibson next contends that the district court erred in applying the first degree murder cross reference under U.S.S.G. §§ 2D1.1(d) and 2A1.1.  He argues that because he was never indicted for the murder of White and because the district court found that Gibson committed the murder only by a preponderance of the evidence, he was "deprive[d]" of "significant liberty interests without the democratic constraint of a grand jury and petit jury and the procedural safeguards of the proof beyond a reasonable doubt evidentiary standard."

During the sentencing proceedings, the district court heard evidence that Gibson ordered White's murder and that the likely "trigger man" was one of Gibson's associates.  The court accepted the evidence presented and, using the preponderance of evidence standard, found it appropriate to apply the first degree murder cross reference under U.S.S.G. § 2D1.1(d)(1).

A sentencing court can make factual findings under the preponderance of the evidence standard to determine the appropriate sentence within the statutory maximum.  See United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a

9

Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict"); see also Rita v. United States, 127 S. Ct. 2456, 2465 (2007) ("[M]any individual Guidelines apply higher sentences in the presence of special facts"; "In many cases, the sentencing judge, not the jury, will determine the existence of those facts"; and "[a]s far as the law is concerned, the judge could disregard the Guidelines and apply the same sentence . . . in the absence of the special facts"). Moreover, a sentencing court may enhance a defendant's sentence based on its findings by a preponderance of the evidence, even where the jury has acquitted the defendant of that conduct. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998). Accordingly we reject Gibson's challenge to the district court's application of the first degree murder cross reference under U.S.S.G. §§ 2D1.1 and 2A1.1 and its factfinding under the preponderance of the evidence standard.

V

Finally, Gibson contends the district judge abused his discretion in denying Gibson's motion, filed before sentencing, to recuse the judge because of the judge's bias against him.

When sentencing two co-conspirators, the judge stated that "two violent deaths have been implicated or are related" to the

10

conspiracy. He also stated that "Maurice Gibson, we all know based on the evidence at trial and in related cases that he was a significant drug dealer, and we also know that there were at least two deaths which appear to be related in some way to his drug dealing." Based on these statements, as well as harsh statements made by the district judge to Gibson's counsel during trial, Gibson filed his motion to disqualify the judge before he sentenced Gibson.

The judge denied the motion, finding that he was not biased or unable to fairly sentence Gibson.

Under 28 U.S.C. § 455, a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." He must disqualify himself also "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Id. at § 455(b)(1). In determining whether a judge has a disqualifying bias, we have stated:

> The alleged bias must derive from an extra-judicial source. It must result in an opinion on the merits on a basis other than that learned by the judge from his participation in the matter. The nature of the judge's bias must be personal and not judicial. A judge is not disqualified because his familiarity with the facts of a case stem from his judicial conduct in presiding over earlier proceedings.

11

In re Diana R. Beard, 811 F.2d 818, 827 (4th Cir. 1987).
Accordingly, opinions gathered from "participation in the matter" will not serve as a basis for a recusal. Id.

We conclude that the district judge did not abuse its discretion in refusing to disqualify himself. There is no reasonable basis to believe that the district judge was biased. Gibson failed to show that the judge had any improper relationships or made any statements about Gibson's guilt or innocence during his trial. The statements made during the sentencing of Gibson's co-conspirators demonstrated no knowledge of Gibson's activities other than that which was acquired by participation in the proceedings.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED